Desmond, J.
Defendant’s conviction was for five crimes of criminal contempt (Penal Law, § 600). The jury’s verdict of guilt amounted to findings that defendant, on his appearances as a witness under subpoena before a New York County Grand Jury on March 11 and 15, 1954, had been five times guilty of contumacious refusals to answer legal and proper questions in that he failed and refused to state definitely who were the participants in five telephone conversations which had been wire-tapped and the recordings of which were read to defendant before the Grand Jury. On this trial for the alleged contempts it *214 was proven that in each of those wire-tapped telephone conversations, defendant himself had been one of the speakers, that in each instance the other speaker and the latter’s voice were well known to defendant and that each such conversation had to do with business dealings of defendant highly important to him and long continued and elaborate. It is thus clear without further demonstration that the jury was justified in saying that defendant’s failures or refusals to answer those questions and his evasiveness when he did answer amounted to criminal contempts as charged in the indictment. It is not disputed that the Grand Jury testimony thus sought to be gotten from defendant would have been material and pertinent to the Grand Jury’s inquiry into alleged violations, in which defendant, an insurance broker, and others were said to be involved, of sections 5 and 113 of the Insurance Law and sections 380 and 580 of the Penal Law.
We turn to the errors which defendant says were committed on the trial and which he urges as grounds for reversal. All the telephone talks above referred to had been intercepted by wire tappings authorized by court orders made pursuant to section 813-a of the New York Code of Criminal Procedure and all the conversations had been recorded. It is settled that such recordings are admissible in evidence in the courts of New York State (Matter of Harlem Check Cashing Corp. v. Bell, 296 N. Y. 15). The Harlem case holding was that New York State’s method of permitting the tapping of wires and the admission into evidence of the recordings thereof is not a violation of section 605 of the Federal Communications Act (U. S. Code, tit. 47, § 605) which says that :“no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person * * * and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto (See, as to criminality, U. S. Code, tit. 47, § 501.) In 1952, six years after our Harlem decision, the United States Supreme Court came to the same conclusion in *215 Schwartz v. Texas (344 U. S. 199) with a flat holding that section 605 does not operate to invalidate a State statute, such as our section 813-a of the Code of Criminal Procedure (supra), authorizing the tapping of wires and the receipt in evidence of the records thereof. Despite Harlem and Schwartz (supra) defendant argues here that section 813-a is violative of the Federal Constitution and of the Federal Communications Act, that the questions which defendant failed to answer were such as would if answered cause him to commit a Federal crime and so could not properly be the basis for a criminal contempt charge, and, finally, that compulsion by subpoena or contempt proceedings to divulge contents of intercepted telephone conversations deprived defendant of his rights under the Federal Constitution and the Federal Communications Act. Our answers to these assertions can be brief.
The general constitutionality of section 813-a of the Code of Criminal Procedure (supra) has long been settled (Matter of Harlem Check Cashing Corp. v. Bell, supra; Black v. Impellitteri, 201 Misc. 371, affd. 281 App. Div. 671, appeal dismissed for want of a substantial constitutional question 305 N. Y. 724; People v. Feld, 305 N. Y. 322, 330). The Harlem and Schwarts cases cited in the next above paragraph of this opinion show that no Federal statute prevents the divulging, in New York courts as evidence, of intercepted telephone conversations. It is clear, too, that this rule of evidence is not affected by the circumstance that requiring a witness to testify as to wire taps might force him to a criminal violation of the Federal Communications Act (People v. Stemmer, 298 N. Y. 728, affd. by equally divided vote 336 U. S. 963; also, Schwartz v. Texas, supra). Coming down to the particular facts of this ease, it is far from clear that the Federal Communications Act prohibition covers divulgence by a participant in the conversation. However, it is entirely clear, first, that what this defendant was asked to do before the G-rand Jury did not come within the language of the Federal Communications Act, and, second, that the divulgence asked of him was not a voluntary one but under compulsion of a subpoena. If a participant in a telephone conversation is forbidden from testifying as to its contents because it was intercepted, then he would likewise be forbidden from testifying to it if not intercepted, since in both instances he would be violating the same supposed privilege or right said by defend *216 ant to belong to the other party to each conversation. The Federal Communications Act is intended to prevent or punish intrusion into the telephone conversation of others. There is no support in the cases for the contention here made that the Act grants any kind of privilege to a telephone talker against divulgence by the person on the other end of the telephone wire of the contents of the talks. United States v. Polakoff (112 F. 2d 888 [2d Cir.]) is not in point' since, despite its discussion as to “ privilege ”, it was not a case of divulgence by a participant (for other Federal cases of wire taps by Federal police officers with the consent of one of the telephone talkers, see United States v. Yee Ping Jong, 26 F. Supp. 69; United States v. Sullivan, 116 F. Supp. 480; United States v. Pierce, 124 F. Supp. 264, affd. 224 F. 2d 281; Flanders v. United States, 222 F. 2d 163).
Although no particular point is made of it by the briefs here, we note that our own State has, in subdivision 6 of section 1423 of the Penal Law, a statute forbidding wire tapping. We have hejd (People v. Applebaum, 301 N. Y. 738) that despite that statute’s general language, it was not intended to prohibit a wire tap by a telephone subscriber of his own telephone. In the case before us defendant did not even tap the line but was asked before the Grand Jury to identify the voices on a recording of a wire tap by someone else. It is farfetched to say that his giving of such testimony would be a crime.
What has been said above sufficiently answers appellant’s a Third Point ” as to the alleged conflict between the Federal Communications Act on the one hand and section 813-a of the New York Code of Criminal Procedure and section 12 of article I of the New York State Constitution on the other hand. Really, the only wire tapping question we have before us here is as to whether this defendant had any valid excuse for refusing to give testimony identifying the voices in recordings of wire taps made by other persons, of conversations in which defendant took part.
Defendant argues in other points of his brief that it was error on this trial to put before the trial jury the whole of his Grand Jury testimony on the five days he testified there, and, second, that it was error in any event to put before this trial jury any testimony as to defendant’s Grand Jury testimony on March 2, 1954. As to the first of these points, it is true that the only direct issue on this contempt trial was as to whether defendant *217 had been criminally evasive and nnco-operative in failing to give definite answers as to whose voices were on tbe recordings. Defendant says tbat it was prejudicial error to let tbe trial jury bear all of defendant’s examination before tbe Grand Jury, particularly because tbat testimony included references, prejudicial to defendant, as to bis alleged association witb notorious underworld characters and as to various improprieties and illegalities in tbe way in wbicb be transacted bis insurance brokerage business. Defendant says tbat proof before tbe trial jury of bis alleged contumacious conduct in refusing to answer questions about the wire taps should have been limited to tbe questions be is supposed to have refused properly to answer and bis answers thereto. But it would be impossible to prove such a contempt in such a way. Before tbe Grand Jury, defendant swore tbat bis failure to state whether be bad taken part in these telephone conversations was because be could not recall the conversations. Tbe State on tbe other band contended on this contempt trial tbat defendant bad simply refused to answer tbe questions because be did not wish to disclose bis relationships witb certain persons of bad reputation. On this particular record and without suggesting tbat tbe same practice would be valid in another case, we bold tbat because of tbe form wbicb defendant’s contempt here took it was proper to show tbe trial jury tbat defendant must have recognized tbe voices because be bad bad such numerous and important transactions witb those persons. Here defendant pretended tbat be did not remember tbe voices and tbe conversations. Tbe People established to tbe satisfaction of tbe trial jury tbat defendant did remember tbe conversations. This tbe prosecution did by showing tbat defendant, in some parts of bis Grand Jury testimony, recalled many details about bis business and admitted tbat be bad bad many transactions witb tbe people who apparently took part witb him in these wire-tapped talks, but tbat bis memory failed him only at tbe point where it was embarrassing for him to remember certain conversations (see Matter of Finkel v. McCook, 247 App. Div. 57, 62, affd. 271 N. Y. 636).
As to tbe admissibility of defendant’s Grand Jury testimony on March 2, 1954, before be bad been granted immunity, bis argument is tbat tbe March 2 testimony, under tbe rule of People v. Gillette (126 App. Div. 665), could not be used against him for any purpose whatever. Defendant says tbat tbe taking from *218 him by the Grand Jury on March 2, 1.954 of testimony which had a tendency to incriminate him was a violation of his constitutional rights and that the testimony was a legal nullity. It is not necessary, however, on this record to reach or discuss the question as to whether the grant of immunity (see Penal Law, § 2447) to defendant before the Grand Jury on his second appearance there on March 9, 1954, reinstated or validated defendant’s March 2, 1954 Grand Jury testimony so that it could be used against him on this present trial for contempt. Whether or not it was error to put the March 2, 1954 preimmunity pretrial testimony before this trial jury,' no prejudice to defendant could have resulted therefrom since the March 2 testimony was preliminary and background testimony only as to the place, personnel and methods of operation of the several offices at which defendant’s insurance brokerage business was conducted. The March 2 Grand Jury testimony may have had some effect at this contempt trial in making it a little clearer to the trial jury how defendant ran his insurance business but it had no tendency in itself to convict him of contempt. The five wire taps were all read to defendant on later appearances before the Grand Jury on March 11 and March 15, 1954, and all his alleged contumacious refusals took place on those later dates. Accordingly, we do not see that People v. De Feo (308 N. Y. 595) has any pertinency here. There is no question here as to whether this defendant could have been convicted of a contempt for failing to answer questions put to him before he had been granted immunity. The alleged contempts here were all committed after an effective grant of immunity.
Defendant makes another argument which necessitates an inquiry similar to that which this court made in People v. Brinkman (309 N. Y. 974). Defendant says that the indictment on which he was here tried was illegal in that the entire testimony of defendant before the Grand Jury and on which he was indicted was not heard by at least 12 of the grand jurors who voted to indict. The rule of the Brinkman case, shortly stated, is that an indictment is good despite the absence of certain grand jurors on various days when testimony is heard, so long as “at least twelve of the Grand Jurors, who voted to indict, heard all essential and critical evidence ” (p. 975). Exhibits in the present case show that 13 of the grand jurors who voted for the true bill were present on *219 these three dates: March 11 and March 15, 1954, being the two days on which the recordings were read to defendant and he failed to identify the voices, and May 13, 1954, the day the indictment was voted. It is true that although 12 of those 13 were present on March 9, which is another day on which testimony was taken, fewer than 12 of those who indicted were in attendance on March 2 and on April 20, on which two latter days also certain testimony was heard by the Grand Jury. But, applying the Brinkman rule {supra), we do have more than 12 of the grand jurors who voted a true bill hearing all the really material testimony which was all given before the Grand Jury on March 11 and 15. While much testimony was taken on the other dates above mentioned, it was not testimony as to the contempts themselves and amounted to no more than background and explanatory material. In our judgment enough testimony was heard on March 11 and 15 to justify the indictment and 13 of the voting jurors heard all of the testimony on those two days. Defendant was not prejudiced in that not all these 13 heard the testimony on the other three days, since nothing heard on those three days had any tendency to exculpate defendant.
Defendant says that it is inconsistent for the People to argue: first, that the testimony on March 2 and April 20 was properly put before this trial jury as material on the issue of contempt and, second, that it was not so material to the contempt that failure of all the grand jurors to hear it invalidated the indictment. We see no such inconsistency.
As to appellant’s assertion that he was guilty of one contempt only, not five contempts, it is a sufficient answer that his contumacious conduct had to do with five separate telephone talks. We do not get to the question as to whether each separate unanswered question could be a separate contempt since in each instance here it was a separate whole conversation that was made the subject of a charge of contempt.
Defendant-appellant’s last argument to us is that his rights were invaded in connection with the use on his trial of a so-called special or “ blue ribbon ” trial jury. The constitutionality in general of the New York State statutes as to the use of special trial juries in criminal cases was upheld by the United States Supreme Court in Fay v. New York (332 U. S. 261) and Moore v. New York (333 U. S. 565). This appellant’s objections *220 are not to the use of special jury panel as such, hut to the possession hy the prosecutor of reports of investigations made for the prosecutor of some of the individuals on this panel of special jurors. Whatever substance this objection might otherwise have was removed hy the act of the District Attorney in presenting to defense counsel, prior to the trial, copies of all the investigation reports which the prosecutor had as to the 150 special jurors drawn for this trial. We do not see how defendant’s rights were invaded since, so far as the record shows, his counsel had, well before the trial, the same information that the prosecutor had.
The judgment appealed from should be affirmed.
Conway, Ch. J., Dye, Fuld, Froessel, Van Voorhis and Burke, JJ., concur.
Judgment affirmed.