**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Salvatore BENANTI, Defendant-**
**Appellant.**

**No. 266, Docket 24427.**

United States Court of Appeals
Second Circuit.

Argued March 7, 1957.

Decided May 6, 1957.

**390**

Paul W. Williams, U. S. Atty., for the Southern Dist. of New York, New York City (John D. Roeder, Executive Asst. U. S. Atty., and Maurice N. Nessen, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellee.

George J. Todaro, New York City, for defendant-appellant.

Before MEDINA and WATERMAN, Circuit Judges, and GALSTON, District Judge.

MEDINA, Circuit Judge.

Salvatore Benanti appeals from a judgment of conviction of illegal possession and transportation of distilled spirits without tax stamps affixed thereto, in violation of 26 U.S.C. §§ 5008(b) (1), 5642. The case is important and we think of first impression, as we are called upon to formulate a rule to govern the admissibility in a federal court of evidence obtained by state officers in violation of Section 605 of the Federal Communications Act, 47 U.S.C.A. § 605, which prohibits any person "not being authorized by the sender" from divulging a communication intercepted by a wiretap. The search-and-seizure cases hereinafter discussed touch the issue closely, but they do not decide it, for they did not deal with the statute before us.

Appellant and his brother, Angelo Benanti, frequented the Reno Bar, on Elizabeth Street in New York City, and the two brothers made telephone calls from the Reno Bar. The New York City police, believing that one or both of the Benantis were dealing in narcotics in violation of state law, obtained a warrant, in accordance with New York law, New York Const. art. 1, § 12; N. Y. Code of Criminal Procedure § 813–a, from the Supreme Court of the State of New York, authorizing them to tap the telephone of the Reno Bar.

On May 10, 1956, by listening in on a conversation over the telephone between appellant and some other person, the state police officers learned that "eleven pieces" would be transported that night at a certain time and place in New York City. Acting pursuant to this information, the police stopped a car driven by appellant's brother Angelo, but they found no narcotics. Instead, they discovered hidden in the car eleven five-gallon cans of alcohol without the tax stamps required by 26 U.S.C. § 5008(b) (1). The Federal Alcohol and Tobacco Tax Division of the Treasury Department was notified and this prosecution followed. It was not until the cross-examination of one of the police officers at the trial that the prosecutor or any of his assistants had any knowledge or suspicion of the fact that there had been a wiretap. It is clear beyond cavil that no federal officer participated in any way in the wiretap or even knowingly offered any evidence which was discovered as a result of the wiretap. But it is equally clear that but for the wiretap there would have been no basis for any prosecution whatever, as the apprehension of Angelo and seizure of the "eleven pieces" led to the discovery of appellant's participation in the violations of federal law for which he has been convicted; and the sequence of cause and effect is clear.

Accordingly, as soon as the wiretap was disclosed at the trial, counsel for appellant objected and in due course made a proper and timely motion to suppress. The denial of this motion provides the major basis for this appeal.

██ Despite the warrant issued by the New York State court pursuant to New York law, we have no alternative other than to hold that by tapping the wires, intercepting the communication made by appellant and divulging at the trial what they had overheard, the New York police officers violated the federal statute. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Id., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298. Section 605 of 47 U.S.C.A. is too explicit to warrant any other inference,[1] and the Weiss case made its terms applicable to intrastate communications. The section provides:

"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

██ But it does not necessarily follow, as appellant assumes, that wiretap evidence is inadmissible. As was said in Nardone v. United States, 308 U.S. 338, at page 340, 60 S.Ct. 266, at page 267:

"Any claim for the exclusion of evidence logically relevant in criminal prosecutions is heavily handicapped. It must be justified by an over-riding public policy expressed in the Constitution or the law of the land."

██ Appellant argues that the statute itself, as interpreted by the Supreme Court, prohibits the use of wiretap evidence. Although the language of the earlier decisions is consistent with this position, it is no longer a tenable one, for the Supreme Court has upheld convictions based on wiretap evidence in both state and federal courts. Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231; Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. Thus, it must be some other principle that requires the exclusion of wiretap evidence in those cases in which it is inadmissible.

It is not difficult to discover what that principle is; the Supreme Court has told us. In Goldstein v. United States, supra, the court said at page 120 of 316 U.S., at page 1003 of 62 S.Ct.:

"Although the unlawful interception of a telephone communication does not amount to a search or seizure prohibited by the Fourth Amendment [Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944], we have applied the same policy in respect of the prohibitions of the Federal Communications Act * * *."

It becomes necessary for us, therefore, to ascertain the principle which governs the admissibility in a federal court of

---

1. The New York cases do not deal with this point; they concern only the admissibility in evidence in the New York courts of wiretap evidence. People v. Saperstein, 2 N.Y.2d 210, 159 N.Y.S.2d 160, 140 N.E.2d 252, certiorari denied 77 S.Ct. 825; People v. Feld, 305 N.Y. 312, 113 N.E.2d 440; People v. Tieri, 300 N.Y. 569, 89 N.E.2d 526; People v. Stemmer, 298 N.Y. 728, 83 N.E.2d 141; Harlem Check Cashing Corp. v. Bell, 296 N.Y. 15, 68 N.E.2d 854. Thus, in Saperstein the New York Court of Appeals declared that its position had been fully vindicated by Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231. The holding in that case was that, "Where a state has carefully legislated so as not to render inadmissible evidence obtained and sought to be divulged *in violation of* the laws of the United States, this Court will not extend by implication the statute of the United States so as to invalidate the specific language of the state statute." 344 U.S. at page 202, 73 S.Ct. at page 235, emphasis added.

evidence obtained by an unconstitutional search or seizure.

The leading case is Weeks v. United States, 232 U.S. 383, 397, 34 S.Ct. 341, 58 L.Ed. 652, wherein the Supreme Court held that documents taken from the defendant's room by a United States Marshal without a warrant and not incident to a lawful arrest could not be introduced in evidence against him, because

"The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures * * * should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." 232 U.S. at page 392, 34 S.Ct. at page 344.

■ Subsequent cases have marked off the bounds of the doctrine, thereby illuminating the underlying principle. There is no rule that all evidence obtained by means of an unconstitutional search or seizure is inadmissible in a federal court. Thus, there is a requirement that the defendant, if his objection is to prevail, must have been a victim of the illegality. Goldstein v. United States, supra. Moreover, and more important for present purposes, it must appear that federal officers participated in the illegality or that the unlawful acts were done in their behalf. The cases so holding in the Courts of Appeals are legion. E.g., United States v. Moses, 7 Cir., 234 F.2d 124; United States v. White, 7 Cir., 228 F.2d 832; Jones v. United States, 8 Cir., 217 F.2d 381; Fredericks v. United States, 5 Cir., 208 F.2d 712, certiorari denied 347 U.S. 1019, 74 S.Ct. 875, 98 L.Ed. 1140; Serio v. United States, 5 Cir., 203 F.2d 576, certiorari denied 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 391; Jaroshuk v. United States, 9 Cir., 201 F.2d 52; Scotti v. United States, 5 Cir., 193 F.2d 644; Symons v. United States, 9 Cir., 178 F.2d 615, certiorari denied 339 U.S. 985, 70 S.Ct. 1006, 94 L.Ed. 1388; Shelton v. United States, 83 U.S.App.D.C. 257, 169 F.2d 665, certiorari denied 335 U.S. 834, 69 S.Ct. 24, 93 L.Ed. 387; United States v. Diuguid, 2 Cir., 146 F.2d 848, certiorari denied 325 U.S. 857, 65 S.Ct. 1184, 89 L.Ed. 1977; Taylor v. Hudspeth, 10 Cir., 113 F.2d 825; Rettich v. United States, 1 Cir., 84 F.2d 118; In re Milburne, 2 Cir., 77 F.2d 310; Gowling v. United States, 6 Cir., 64 F.2d 796; Burkis v. United States, 3 Cir., 60 F.2d 452, certiorari denied 287 U.S. 655, 53 S.Ct. 117, 77 L.Ed 566; Miller v. United States, 3 Cir., 50 F.2d 505, certiorari denied 284 U.S. 651, 52 S.Ct. 31, 76 L.Ed. 552.

Although the Supreme Court has had many opportunities to upset this rule, it has not done so. On the contrary, in Byars v. United States, 273 U.S. 28, at page 33, 47 S.Ct. 248, at page 250, 71 L.Ed. 520, the Court said:

"We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account. But the rule is otherwise when the federal government itself, through its agents acting as such, participates in the wrongful search or seizure."

Was this rule discarded or in effect superseded by the holding in Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, that the Fourteenth Amendment prohibited unlawful searches and seizures by state officials, a point which had not previously been authoritatively settled? We think clearly not. The issue was crucial, and dissenting Justices pointed out again and again their view that only by ruling out evidence procured by an unconstitutional search and seizure in both state and federal courts could the constitutional prohibition, now applicable to the acts of state officials, be given vitality. But the rule requiring participation by federal officials as a basis for the exclusion of such evidence was again applied in Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819, decided the same day as Wolf v. People of State of Colorado. And as recently as Irvine v. People of State of California, 347 U.S.

128, at page 136, 74 S.Ct. 381, at page 385, 98 L.Ed. 561, Mr. Justice Jackson, speaking for four Justices, said, "Even this Court has not seen fit to exclude illegally seized evidence in federal cases unless a federal officer perpetrated the wrong." We have no alternative other than to take this to be the law today.

As remarked by Mr. Justice Frankfurter in the Lustig case, supra, 338 U.S. at pages 78–79, 69 S.Ct. at page 1374: "The crux of the doctrine is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter."

■ The case of Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, deserves special mention. There no federal officer took part in the unconstitutional actions, but the evidence was excluded nevertheless, because the state police were acting solely to enforce federal law. The case highlights the principle applied by the federal courts in excluding evidence which has been obtained by unconstitutional methods. Clearly the purpose of the rule is to discourage such activities by overzealous law enforcement officers. It is thought that the federal courts by refusing to receive evidence obtained in violation of the law of the land will cause persons seeking federal convictions to forego the use of such methods. See Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233; 56 Colum.L.Rev. 940. Of course, if an unconstitutional search or seizure was not undertaken in order to secure evidence to be used in a federal court, a rule of exclusion by such a court would serve no useful purpose, for the violation would have occurred in any event. Exclusion in such a case would merely needlessly hamper the enforcement of federal law. Hence, as we have seen, the federal courts do not exclude evidence of federal crimes incidentally obtained by state officers seeking to enforce state law, even though by methods violative of the Fourteenth Amendment, for, whatever we may think of the rule,

it is now settled law that the Constitution does not render such evidence inadmissible in a state court. Irvine v. People of State of California, supra; Schwartz v. State of Texas, supra; Wolf v. People of State of Colorado, supra. Since, this being so, exclusion from a federal court would not deter such activities, the evidence is admissible.

■ We can find no tenable distinction in principle between the rule of policy governing the admissibility in federal courts of evidence illegally obtained by state officers through an unlawful search and seizure, without participation or collusion by federal officials, and the rule of policy which should govern the admissibility of evidence obtained by state officials under similar circumstances in violation of the federal statute against wiretapping. On the contrary, as Judge Learned Hand, speaking for this Court, observed in United States v. Goldstein, 2 Cir., 120 F.2d 485, at page 490, "it would be a curious result, if a violation of the section were more sweepingly condemned than a violation of the Constitution." The Supreme Court in affirming, Goldstein v. United States, supra, pointed out the limited scope of the rule requiring the exclusion of unconstitutionally obtained evidence, and said, "We think no broader sanction should be imposed upon the Government in respect of violations of the Communications Act." 316 U.S. at page 121, 62 S.Ct. at page 1004. Apart from this authority, surely it cannot be that the violation of a federal statute calls forth implied sanctions more pervasive than those formulated by the Supreme Court to compel obedience to a constitutional mandate.

Appellant insists that the issue now before us has been decided in his favor in Schwartz v. State of Texas, supra, and he relies upon and misconstrues the following part of a sentence appearing at page 203 of 344 U.S., at page 235 of 73 S.Ct.: "We hold that § 605 applies only to the exclusion in federal court proceedings of evidence obtained and sought to be divulged in violation thereof

\* \* \* ." But the Court was only concerned in Schwartz v. State of Texas with the admissibility of such evidence in state court proceedings. The intercepted call in the case now before us would, we think, have been clearly not admissible if federal officers participated. To say that the rule of exclusion applies only to federal court proceedings is not to say that wiretap evidence given in violation of Section 605, will always and under all circumstances be excluded in every proceeding in a federal court. The question now before us was not passed upon in Schwartz v. State of Texas; nor do we find in Mr. Justice Minton's opinion the slightest hint that this question was given any consideration whatever.

 Accordingly, we hold that Judge Walsh properly denied the motion to suppress.

The only other issue on this appeal is whether the trial judge abused his discretion in refusing to allow a continuance. There is no need to detail the facts. We are not persuaded that under the circumstances it was unreasonable to order the case to trial.

Affirmed.