Joseph BURACK, Plaintiff,

v.

The STATE LIQUOR AUTHORITY OF The STATE OF NEW YORK and Edward Silver as District Attorney of The County of Kings, Defendants.

Civ. No. 18463.

United States District Court
E. D. New York.
March 12, 1958.

Supp. 369 and several State cases cited in Schifrin v. Chenille Mfg. Co., 2 Cir., 117 F.2d 92.

Milton M. Eisenberg, Brooklyn, N. Y., by Nathan Schwartz, Brooklyn, N. Y., of counsel, for plaintiff, for the motion.

Louis J. Lefkowitz, Atty. Gen., by Abe Wagman, New York City, of counsel, for defendant State of New York.

Edward Silver, Dist. Atty. of Kings County, by William I. Siegel, Brooklyn, N. Y., for defendant Edward Silver.

Oscar A. Blaustein, New York City, by Emanuel D. Black, New York City, of counsel, for defendant State Liquor Authority, in opposition.

RAYFIEL, District Judge.

Under the authority of a license issued to him by the defendant, New York State Liquor Authority, hereinafter called The Authority, the plaintiff owns and operates a retail package liquor store in the Borough of Brooklyn, in this District.

The Authority has instituted a proceeding under the Alcohol Beverage Control Law of the State of New York for the revocation or suspension of the license, and the plaintiff, claiming that The Authority intends to use certain illegally-obtained evidence in said proceeding, asks for a preliminary injunction enjoining such use. It is his contention that the revocation, or even suspension, of his license, a valuable property right, will result in irreparable loss or damage.

The plaintiff charges that the evidence in question was obtained by means of a wiretap of the telephone of his son, in clear violation of Section 605 of the Federal Communications Act (47 U.S.C.A. § 605), which provides, in pertinent part, that no person, not being authorized by the sender thereof, shall intercept any communication and divulge its contents, substance, purport or meaning.

The plaintiff relies chiefly on the case of Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 157, 2 L.Ed.2d 126. There the Court reversed the judgment of the Court of Appeals, 2 Cir., 244 F.2d 389, which had affirmed a conviction in the district court, because of the admission of evidence obtained by state law-enforcement officers by means of wiretapping, although an order authorizing such obtainment had been issued in accordance with Section 813–a of the New York Code of Criminal Procedure.

In Benanti v. United States, supra, the Court said: "In Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, this Court held that evidence obtained from wiretapping by federal agents was inadmissible in federal court. In Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, the same type of evidence was held admissible in a state court where it had been obtained by state agents. The case before us, containing elements from these three cases, forces a choice between the different results reached.

"The Nardone decisions laid down the underlying premises upon which is based all subsequent consideration of Section 605. The crux of those decisions is that the plain words of the statute created a prohibition against any persons violating the integrity of a system of telephonic communication and that evidence obtained in violation of this prohibition may not be used to secure a federal convic-

tion. Nardone v. United States, 302 U.S. 379, 382, 58 S.Ct. 275, 276, 82 L.Ed. 314. Moreover, as the second Nardone decision asserts, distinctions designed to defeat the plain meaning of the statute will not be countenanced. 308 U.S. 338, 340, 60 S.Ct. 266, 267, 82 L.Ed. 307. We hold that the correct application of the above principle dictates that evidence obtained by means forbidden by Section 605, whether by state or federal agents, is inadmissible in federal court."

Addressing itself to the respondent's argument that under Schwartz v. Texas, supra, the wiretap evidence should be admissible in a federal court because it had been obtained without the participation or even knowledge of federal officers, the Court said: " * * * Schwartz v. Texas does not indicate approval of such a proposition. Both a state court and state law enforcement officers were there involved. The rationale of that case is that despite the plain prohibition of Section 605, due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear indication to that effect. In the instant case we are *not* dealing with a state rule of evidence. Although state agents committed the wiretap, we are presented with a federal conviction brought about in part by a violation of federal law, in this case in federal court."

Answering the respondent's alternative argument that the wiretap was permitted by the law of the State of New York, and was not violative of Section 605, because that section was too general in its terms to prohibit the authorization of a wiretap in the proper exercise of its police functions, the Court further said: " * * * We read the Federal Communications Act, and Section 605 in particular, to the contrary.

"*The Federal Communications Act is a comprehensive scheme for the regulation of interstate communication. In order to safeguard those interests protected under Section 605, that portion of the statute pertinent to this case applies both to intrastate and to interstate communications.*" (Emphasis added.)

It does not necessarily follow, however, that the Supreme Court would take a similar position in the case at bar, involving, as it does, a proceeding by an administrative agency of the state. It may in such a case hold, as it did in Schwartz v. Texas, supra [344 U.S. 199, 73 S.Ct. 234], that evidence obtained by state officers is admissible in such a proceeding, for there the Court said:

"We are dealing here only with the application of a federal statute to state proceedings. Without deciding, but assuming for the purposes of this case, that the telephone communications were intercepted without being authorized by the sender within the meaning of the Act, the question we have is whether these communications are barred by the federal statute, § 605, from use as evidence in a criminal proceeding in a state court.

"We think not. * * * Although the intercepted calls would be inadmissible in a federal court, it does not follow that such evidence is inadmissible in a state court. Indeed, evidence obtained by a state officer by means which would constitute an unlawful search and seizure under the Fourth Amendment to the Federal Constitution is nonetheless admissible in a state court, Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, while such evidence, if obtained by a federal officer, would be clearly inadmissible in a federal court. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The problem under § 605 is somewhat different because the introduction of the intercepted communications would itself be a violation of the statute, but in the absence of an expression by Congress, this is simply an additional factor for a state to consider in formulating a rule of evidence for use in its own courts. * * *"

The Authority relies chiefly on the claim that before applying to this court for relief the plaintiff must ex-

haust such corrective processes as are available in the state courts.

Section 121 of the Alcohol Beverage Control Law of the State of New York provides that the revocation, cancellation or suspension of a license by The Authority is subject to review by the Supreme Court of the state in the manner provided by Article 78 of the New York Civil Practice Act, or by any other appropriate remedy, and a stay may be granted pending the determination of the proceeding.

In support of its contention The Authority cites the case of Alabama Public Service Commission v. Southern Railway Company, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, which also involved a state administrative agency. The facts there were as follows: The Railway applied to the Commission for permission to discontinue certain trains then running in intrastate passenger service, on the ground that they were being operated at a loss. The application was denied.

The Railway did not pursue its right to appeal to the State Courts. Instead, it commenced an action against the Commission and the Attorney General of the State of Alabama to enjoin the enforcement of the statute prohibiting such discontinuance, claiming that irreparable loss or damage would result in the operation of the trains if the statute were complied with, or in penalties in the event of non-compliance, amounting to confiscation of its property in violation of the Due Process Clause of the 14th Amendment of the Constitution of the United States.

A three-judge federal district court enjoined enforcement of the Commission's order and an appeal was taken to the Supreme Court under Section 1253 of Title 28 U.S.Code.

The Supreme Court said, 341 U.S. at pages 349 and 350, 71 S.Ct. at page 768, "Appellee has not shown that the Alabama procedure for review of Commission orders is in any way inadequate to preserve for ultimate review in this Court any federal questions arising out of such orders.

"As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts,' *is convinced that the asserted federal right cannot be preserved except by granting the 'extraordinary relief of an injunction in the federal courts.'* Considering that '(f)ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies,' the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts. Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 1941, 311 U.S. 570, 577, 61 S.Ct. 343, 346, 85 L.Ed. 358; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368, as amended, 1940, 311 U.S. 614, 615, 61 S.Ct. 66, 85 L.Ed. 390." (Emphasis added.)

The plaintiff contends, that an attempt to pursue his remedy in the state courts would be futile, and cites People v. Feld, 305 N.Y. 322, 113 N.E.2d 440 and People v. Saperstein, 2 N.Y.2d 210, 159 N.Y.S. 2d 160, 140 N.E.2d 252, in support of that contention. Both those cases held that Section 605, supra, did not invalidate Section 813(a) of the Code of Criminal Procedure, but they antedate Benanti v. United States, and, as hereinabove stated, the Supreme Court said in Schwartz v. Texas, supra, *that its conclusion that the introduction of an intercepted communication would be a violation of Section 605 might be an additional factor for a state to consider in formulating a rule of evidence for use* in its own courts.

Justice Hofstadter, of the New York Supreme Court, recently held on the authority of Benanti v. U. S., that no wiretap order may be issued pursuant to Section 813(a), supra.

More recently, in the case of People v. Dinan, Sup., 172 N.Y.S.2d 496, County Judge Coyle, of Westchester County, on the same authority, granted a motion to dismiss the indictment which had been obtained as the result of evidence secured by wiretapping. After discussing that case at some length, and noting its conflict with prior decisions of the Court of Appeals of the State of New York respecting evidence obtained by wiretapping, he suggested the advisability of a determination of the questions involved by the appellate courts of the state.

I am faced, then, with a choice between Benanti, wherein the Supreme Court stated that "Section 605 contains an express, absolute prohibition against the divulgence of intercepted communications" [355 U.S. 96, 78 S.Ct. 158] and Alabama, etc. v. Southern Railway Co., wherein, although holding that the Railway Co. should have first exhausted its remedy in the state courts, it stated that the extraordinary relief of an injunction may be granted if the District Court is convinced that the Federal right involved cannot be preserved except by the issuance thereof.

The exigency of the situation confronting the plaintiff is such that I am led to the conclusion that he is entitled to injunctive relief herein, for The Authority, assuming that it is unable to continue its proceeding without the allegedly tainted evidence, will suffer only a delay if such relief is granted, while the plaintiff, if denied the relief, will suffer irreparable injury and damage in the loss of the valuable property rights represented by his license and the good will of his business.

A further reason for my conclusion is the provision in Section 121, supra, that no stay shall be granted pending the determination of the matter for a period of more than thirty days. That period may not be extended. Barcus v. O'Connell, 281 App.Div. 1064, 121 N.Y. S.2d 366. Because of that 30-day provision the time still available for the filing and *final* determination of state court proceedings is inadequate. Even if the plaintiff should be successful in such a proceeding he would win but a Pyrrhic victory.

For the foregoing reasons the application for a preliminary injunction is granted.

Findings of fact and conclusions of law will follow.

Settle order on notice.