UNITED STATES of America ex rel. Dominick GRAZIANO, Petitioner-Appellant,

v.

Daniel McMANN, Acting Warden, Clinton Prison, and The People of the State of New York, Appellees.

No. 208, Docket 25977.

United States Court of Appeals Second Circuit.

Argued Feb. 1, 1960.

Decided Feb. 11, 1960.

Nathan Kestnbaum, New York City, for petitioner-appellant.

George K. Bernstein, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Paxton Blair, Sol. Gen., Albany, N. Y., and Irving Galt, Asst. Sol. Gen., New York City, on the brief), for appellees.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, United States Court of Claims.*

WATERMAN, Circuit Judge.

Appellant was convicted of the crime of robbery in the first degree after trial by jury in 1956 in a New York State Court. During trial evidence was introduced against appellant that had been obtained by the State-authorized use of

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

wiretaps.[1] Appellant's conviction was affirmed by the Appellate Division, First Department, People v. Graziano, 3 A.D. 2d 1010, 165 N.Y.S.2d 445, and by the Court of Appeals, 4 N.Y.2d 881, 174 N.Y. S.2d 465, 150 N.E.2d 768. Following the affirmance by the Court of Appeals and preparatory to applying for a writ of certiorari to the United States Supreme Court, Graziano moved that the remittitur in his case be amended so as to show that the Court of Appeals had passed upon the issue of the legality of the introduction of wiretap evidence. The Court denied the motion, and appellant's petition for review by the United States Supreme Court was denied, 358 U.S. 851, 79 S.Ct. 79, 3 L.Ed.2d 85.

Appellant then preferred to the United States District Court for the Northern District of New York his application for the issuance of a writ of habeas corpus in order to test there whether the evidence obtained as a result of this wiretapping was improperly admitted against him at his state court trial in the New York State Courts. The application was denied and, a certificate of probable cause and leave to appeal *in forma pauperis* having been granted, the case is before us on appeal from this denial. The same question is presented to us.

We have no difficulty in unanimously affirming the District Court, despite the fact that evidence presented against appellant was obtained and divulged in violation of 47 U.S.C.A. § 605. We believe that Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, is complete authority for the result we reach. Provided it has logical reference to the proof required to establish guilt, wiretap evidence obtained by New York State officers who have been affirmatively authorized to tap pursuant to Section 813–a of the State Code of Criminal Procedure is held by the New York Court of Appeals to be admissible in criminal cas-

1. Article 1, § 12 of the New York State Constitution reads as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The right of the people to be secure against unreasonable interception of telephone and telegraph communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof. Adopted by Constitutional Convention of 1938; approved by the people Nov. 8, 1938."

In 1956 § 813–a, New York Code of Civil Procedure, read as follows:

"An ex parte order for the interception of telegraphic or telephonic communications may be issued by any justice of the supreme court or judge of a county court or of the court of general sessions of the county of New York upon oath or affirmation of a district attorney, or of the attorney-general or of an officer above the rank of sergeant of any police department of the state or of any political subdivision thereof, that there is reasonable ground to believe that evidence of crime may be thus obtained and identifying the particular telephone line or means of communication and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof. In connection with the issuance of such an order the justice or judge may examine on oath the applicant and any other witness he may produce for the purpose of satisfying himself of the existence of reasonable grounds for the granting of such application. Any such order shall be effective for the time specified therein but not for a period of more than six months unless extended or renewed by the justice or judge who signed and issued the original order upon satisfying himself that such extension or renewal is in the public interest. Any such order together with the papers upon which the application was based shall be delivered to and retained by the applicant as authority for intercepting or directing the interception of the telegraphic or telephonic communications transmitted over the instrument or instruments described. A true copy of such order shall at all times be retained in his possession by the judge or justice issuing the same."

es in the New York Courts. People v. Variano, 1959, 5 N.Y.2d 391, 185 N.Y.S. 2d 1, 157 N.E.2d 857; People v. Saperstein, 1957, 2 N.Y.2d 210, 159 N.Y.S.2d 160, 140 N.E.2d 252. Cf. People v. Dinan, 2nd Dept., 1958, 7 A.D.2d 119, 181 N.Y.S.2d 122, affirmed 1959, 6 N.Y. 2d 715, 185 N.Y.S.2d 806, 158 N.E.2d 501, certiorari denied 1959, 361 U.S. 839, 80 S.Ct. 71, 4 L.Ed.2d 78. Even though, unless authorized by the sender, evidence obtained by intercepted wiretap would be clearly inadmissible in a federal court, Nardone v. United States, 1937, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Weiss v. United States, 1939, 308 U.S. 321, 329, 60 S.Ct. 269, 84 L.Ed. 298, introduction of the identical wiretap evidence in New York State Courts, although clearly violative of the federal prohibitory statute, is not thereby prevented. Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652. Cf. Benanti v. United States, 1957, 355 U.S. 96 at page 101, 78 S.Ct. 155, 2 L.Ed.2d 126.

As was stated in Schwartz v. State of Texas, supra, 344 U.S. at page 201, 73 S.Ct. at page 234, "[e]nforcement of the statutory prohibition in § 605 can be achieved under the penal provisions of § 501."[2]

There was no denial of any constitutional right. Schwartz v. State of Texas, supra. Appellant cannot be heard to complain because the wiretap communi-cations were divulged and were of assistance in convicting him.

Affirmed.

MEDINA, Circuit Judge (concurring).

I concur but with some reluctance. While I agree that there seems to be little likelihood that the rule of Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, will be changed, at least in the foreseeable future, it may well be that we are here dealing with something more than a state rule of evidence to the effect that evidence illegally obtained is admissible if relevant to the case and otherwise unobjectionable. The very fact that the State of New York not only has formulated through its courts a rule of evidence, but has also established and maintained, in its Constitution and legislation, a system of wiretapping that is persistently and continuously in operation through orders of New York judges authorizing the wiretapping and through New York enforcement officers who do the wiretapping and then divulge the wiretaps in testimony before Grand Juries and petit juries, all despite the ruling of the Supreme Court in Benanti v. United States, 1957, 355 U.S. 96, 78 S. Ct. 155, 2 L.Ed.2d 126, to the effect that the entire system is illegal and in violation of the federal Communications Act of 1934, 47 U.S.C.A. § 605, and despite the Supremacy Clause, Article VI, Clause 2, U.S. Constitution, may well constitute an invasion of appellant's constitutional right to due process under the Four-

---

2. The pertinent part of 47 U.S.C.A. § 605 reads as follows:
" * * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * * and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto."
47 U.S.C.A. § 501 provides:
"Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, * * * shall, upon conviction thereof, be punished * * * by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both * * *."

teenth Amendment.[1] If this be so the Supreme Court may grant certiorari to review the ruling we are now making on the affirmance of the judgment of conviction against Graziano. The point is novel and the solution far from clear.

1. In Salsburg v. State of Maryland, 1954, 346 U.S. 545, 74 S.Ct. 280, 285, 98 L. Ed. 281, the appellant, who had been convicted of a gambling misdemeanor in a Maryland court, contended that illegally seized evidence had been admitted under a Maryland statute which was unconstitutional. In rejecting a contention that the Maryland statute in question affirmatively sanctioned the unconstitutional searches the Court stated that, "We find no merit in the suggestion of appellant that the 1951 amendment to the Bouse Act affirmatively sanctions illegal searches and seizures in violation of the Due Process Clause of the Fourteenth Amendment. If the statute were so interpreted such a question might arise."[11] Footnote 11 reads: " ' * * * we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment.' Wolf v. People of State of Colorado, 338 U.S. 25, 28, 69 S.Ct. 1359, 93 L.Ed. 1782."