**Burton N. PUGACH, Plaintiff,**

v.

**Hon. Daniel V. SULLIVAN, District Attorney of Bronx County and Hon. Stephen P. Kennedy, Police Commissioner of the City of New York, Defendants.**

United States District Court
S. D. New York.
Jan. 13, 1960.
Judgment Affirmed April 14, 1960.

---

Herbert S. Siegal, and Louis Fusco, Jr., New York City, for plaintiff.

Daniel V. Sullivan, Dist. Atty., Bronx County, New York City, Irving Anolik, Asst. Dist. Atty., Bronx County, New York City, of counsel.

Charles H. Tenney, Corp. Counsel, New York City, for respondent Stephen P. Kennedy, Rose Schneph, Daniel Z. Nelson, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff Pugach is under two indictments returned by the Grand Jury of Bronx County charging him with felonious possession of firearms, burglary, maiming, assault, and conspiracy. He is scheduled to stand trial on these indictments on January 18, 1960 in the County Court of Bronx County.

He claims that his telephone was tapped by agents of the defendant law enforcement officers, in violation of § 605 of the Federal Communications Act, 47 U.S.C.A. § 605; that the contents of telephone conversations obtained by such wiretaps, and information secured as a consequence thereof, were divulged to the Grand Jury and formed the basis for the indictments against him; and that evidence as to these communications and the information so secured will be offered against him by the prosecution at the trial. He therefore brings this action to enjoin the Bronx County District Attorney and the New York City Police Commissioner and their agents and servants from divulging the existence or contents

of any telephone communications which were obtained through the tapping of his telephone and to enjoin the introduction at the trial of all evidence obtained as a result of the wiretaps.

Jurisdiction lies under 28 U.S.C. § 1343 and 42 U.S.CA. § 1983. See Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. See, also, Burt v. City of New York, 2 Cir., 156 F.2d 791.

Plaintiff now moves for the injunctive relief which he seeks in his complaint. The defendants in turn make what are in effect cross-motions to dismiss the complaint for failure to state a claim upon which relief can be granted.

It is not disputed that an ex parte order of the New York Supreme Court was obtained by the District Attorney of Bronx County pursuant to § 813–a of the New York Code of Criminal Procedure, purporting to authorize the tapping of plaintiff's telephone, and that his telephone was tapped by state law enforcement officers acting under such order. Nor is it denied that the indictments in question were in substantial part based on telephone conversations so obtained, and information secured as a result. It appears highly likely that the prosecution will use such evidence against plaintiff on the trial of the indictments. Plaintiff claims that the use of this evidence at the trial will cause him irreparable injury against which he has no protection except through this court.

The issue before me is (1) whether this court can or should enjoin the divulgence by witnesses at a New York State criminal trial of the contents of telephone communications obtained through wiretapping in violation of § 605 of the Federal Communications Act, though pursuant to the Constitution and statutes of the State of New York, and (2) whether the presentation of evidence secured through leads obtained by such wiretaps should also be enjoined.[1]

Questions arising from the tapping of telephones in aid of enforcement of the criminal law, the disclosure of telephone communications obtained by wiretapping, and the admissibility of evidence secured from leads so obtained have frequently been before the courts in recent years.[2]

In Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, the Supreme Court held, four Justices dissenting, that the tapping of telephones does not violate the Fourth or Fifth Amendments to the Constitution.[3] That decision still holds.

---

1. The complaint also claims that the violation of § 605 has affected substantial property rights of the plaintiff, as well as his personal rights. It is alleged that he is a member of the New York bar, that some of the conversations which was intercepted were privileged communications between himself and his clients, that a conviction upon the trial of these indictments will cause him to lose his valuable license to practice law in New York, and that it will also jeopardize a liquor license owned by a corporation of which he is a stockholder and in which he has a substantial property interest. However, there is no claim that his property rights will be affected by any threatened acts of the defendants apart from their testimony at the trial and the possible resulting conviction. The relief sought here is confined to the presentation of evidence at the criminal trial about to be held.

The allegations as to property rights which might be affected by a conviction at that trial do not expand the issues here beyond those which I have defined above.

2. The problem has also been extensively discussed in the law reviews. For two articles discussing the underlying philosophical and law enforcement problems, as opposed to the strictly legal problems, raised by wiretapping, see Rogers, The Case for Wiretapping, 63 Yale L.J. 792 (1952); Westin, The Wiretapping Problem: An Analysis and a Legislative Proposal, 52 Columbia L.Rev. 165 (1952).

3. Justices Holmes, Brandeis, Stone and Butler dissented. See, also, the dissenting opinions of Justices Frankfurter and Douglas in On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.

Six years after Olmstead Congress passed the Federal Communications Act,[4] Section 605 of which provides,[5] with respect to communications by wire or telephone, that

" * * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * * no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: * * * ."

Thereafter, in Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, the Supreme Court held that all evidence obtained from the tapping of telephones by federal agents is inadmissible in the federal courts. Such evidence includes not only actual telephone conversations so obtained but all evidence secured as a result of information or leads therefrom.[6] It makes no difference whether the telephone communications are interstate or intrastate. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298.

However, in Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, the Supreme Court held that evidence of this nature was admissible in the state courts where it had been obtained by state agents, and that its admission was not a ground for reversal of a state court conviction. The rule excluding, in federal proceedings, evidence obtained and sought to be divulged in violation of § 605 was held to be a rule of evidence only. The court found that Congress, by forbidding the interception and divulgence of telephone communications, did not intend to impose the federal exclusionary rule of evidence [7] on the state courts, and that the states were free to make and apply their own rules of evidence on this subject matter.

In Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 [8] the question presented was whether evidence obtained as a result of wiretapping by state law enforcement officers, without participation by federal authorities, was admissible in a federal court. The court was thus faced with a choice between the results reached in Nardone and Schwartz. It held that the state agents, in committing the wiretap, were violating the federal law even though they were acting in accordance with the Constitution and statutes of the State of New York which permit a telephone tap under an ex parte order issued by a state court judge. The court refused to permit any evidence obtained through wiretapping in violation of § 605 to be admitted in federal criminal proceedings. Under the comprehensive scheme of interstate regulation embodied in the Federal Communications Act and the public policy underlying § 605 (355 U.S. at pages 105–106, 78 S.Ct. at page 160)

" * * * Congress, setting out a prohibition in plain terms, did not mean to allow state legislation which would contradict that section and that policy."

---

4. 48 Stat. 1064.

5. 47 U.S.C.A. § 605.

6. This was a logical extension of the "fruits of the poisonous tree" doctrine first enunciated in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed.2d 319.

7. First established in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

8. Extensively discussed in 57 Columbia L. Rev. 1159 (1957).

■ The Federal Communications Act not only prohibits the tapping of telephones but Section 501 of the Act also makes such interception and divulgence of telephone communications a federal crime. 47 U.S.C.A. § 501. The violation of § 605 may also give rise to a civil action for damages. See Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 694.

■ Since the Benanti case there is little doubt that state officers who engage in telephone wiretaps and divulge the contents of communications so obtained not only are acting in violation of the federal statute but are committing a federal crime. The fact that they act in aid of law enforcement and under purported authority of state Constitution and statutes does not make their acts any less a violation of federal law. This was recognized by the New York Supreme Court in In Matter of Interception of Telephone Communications, 9 Misc.2d 121, 170 N.Y.S.2d 84. There Mr. Justice Hofstadter held that he could not lawfully issue orders pursuant to § 813–a of the New York Code of Criminal Procedure authorizing telephone wiretaps by state law enforcement officers since, in the light of the Benanti case, such wiretaps were in violation of federal law.

■ However, it does not follow that plaintiff is entitled to an injunction against the introduction of evidence so obtained at a state criminal trial. As was made abundantly clear in Schwartz v. State of Texas, supra, the question of whether such evidence is admissible in a state criminal trial has been left for the states to determine. Congress, by enacting § 605, did not intend "to thwart a state rule of evidence". The policy of the State of New York, as reaffirmed by its Court of Appeals subsequent to Benanti, is that wiretap evidence even though illegally obtained is admissible in a state criminal trial. People v. Variano, 5 N.Y.2d 391, 185 N.Y.S.2d 1, 157 N.E. 2d 857.

Cases dealing with the admissibility in state criminal prosecutions of evidence obtained by unlawful search and seizure arising under the Fourth and Fourteenth Amendments to the Constitution furnish a parallel here. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, held that the admission of such evidence in a prosecution in a state court for a state crime was not forbidden and the court refused to reverse a state court conviction because such evidence had been received.[9]

■ In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 120, 96 L.Ed. 138, the petitioner appealed from a denial by the federal district court of an injunction against the use in pending state criminal proceedings of the fruits of an unlawful search and seizure by the New Jersey State Police. It was held that the federal courts should refuse to intervene in state criminal proceedings to suppress the use of evidence even when secured by unlawful search and seizure.[10]

As Mr. Justice Frankfurter, writing for the court said[11]:

"The consequences of exercising the equitable power here invoked are not

9. See, also, Irvine v. People of State of California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561, narrowly limiting Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183.

10. The Civil Rights Act " 'should be construed so as to respect the proper balance between the States and the federal government in law enforcement,' Screws v. United States, 325 U.S. 91, 108, 65 S. Ct. 1031, 1039, 89 L.Ed. 1495," and is " 'not to be used to centralize power so as to upset the federal system.' Collins v. Hardyman, 341 U.S. 651, 658, 71 S.Ct. 937, 940, 95 L.Ed. 1253." See, also,

Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

11. 342 U.S. at pages 123–124, 72 S.Ct. at page 121. It may be noted that a footnote cites by way of illustration cases, among others, where the lower courts have refused to intervene by injunction upon a claim that state officers had violated the federal wiretapping statute. See McGuire v. Amrein, D.C., 101 F. Supp. 414; Hoffman v. O'Brien, D.C., 88 F.Supp. 490. But see Burack v. State Liquor Authority, D.C.E.D.N.Y., 160 F. Supp. 161.

the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court to, determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution."

 The same considerations which impelled the court in Stefanelli to refuse to exercise its equitable powers to interfere in a state criminal proceeding also apply in the case at bar.[12] There is nothing here which removes this case from the orbit of Stefanelli. It is true that the testimony of state officers and agents as to actual telephone conversations which had been intercepted would in itself constitute divulgence in criminal violation of the express prohibitions of § 605. But even if it were established that such divulgence will occur (and it has not been affirmatively shown that it will) this would not justify a departure from the principles of Stefanelli. Schwartz v. State of Texas, supra, made it plain that § 605 does not operate to exclude such evidence in state court proceedings even though "the introduction of the intercepted communications would itself be a violation of the statute". This is "simply an additional factor for a state to consider in formulating a rule of evidence for use in its own courts. Enforcement of the statutory prohibition in § 605 can be achieved under the penal provisions of § 501".[13] As I have pointed out, plaintiff may also have a remedy in civil damages. See Reitmeister v. Reitmeister, supra.

Plaintiff is not entitled to injunctive relief from this court. The federal courts will not exercise their equity powers to disturb the delicate balance of our federal system by interference with or embarrassment of criminal proceedings in the state courts.

Plaintiff's motion for a preliminary injunction is therefore in all respects denied and the motions of the defendants to dismiss the complaint are granted.

It is so ordered.

12. Voci v. Storb, 3 Cir., 235 F.2d 48.

13. 344 U.S. at page 201, 73 S.Ct. at page 234.