72 N.Y.2d 298 (1988)
The People of the State of New York, Respondent,
v.
Carl Collier, Appellant.
Court of Appeals of the State of New York.
Argued June 1, 1988.
Decided July 6, 1988.
Spiros A. Tsimbinos and William S. Kohn for appellant.
Elizabeth Holtzman, District Attorney (Peter A. Weinstein, Barbara D. Underwood and Moira E. Casey of counsel), for respondent.
Chief Judge WACHTLER and Judges SIMONS, ALEXANDER, TITONE, HANCOCK, JR., and BELLACOSA concur with Judge KAYE; Judge TITONE concurs in a separate opinion in which Judge HANCOCK, JR., also concurs.
*299 KAYE, J.
A vote to indict by 12 jurors, each of whom has heard all the critical and essential evidence presented and the charge, satisfies statutory requirements for a valid indictment. The full 16-juror quorum need not deliberate and vote.
Defendant was arrested on January 20, 1984. Allegedly, he and five accomplices, armed with guns and knives, had robbed the cashier of a Kansas Fried Chicken store, only to encounter several police officers as they fled from the restaurant with the proceeds.
Evidence in the case was presented to the Grand Jury on four days: January 26, 27, 30 and 31. On February 1, 1984, the grand jurors were charged on the law. During the charge, the jurors were instructed that they could not vote unless they had heard all the evidence presented in the case. The prosecutor left the jurors to their deliberations, but was called back after a poll taken by the foreperson revealed that only 12 jurors had heard all the evidence. In response to the foreperson's question about whether the jury could still deliberate, the prosecutor responded that so long as 12 members had heard all the evidence, a vote could be taken. One of the jurors stated that certain personal "reservations" might make *300 it impossible to deliberate, and asked whether the deliberations could be postponed until more jurors who had heard all the evidence were present, so that the juror's reservations would not force the Grand Jury to vote no true bill. After some discussion, however, the jurors decided to deliberate, and ultimately voted the indictment.
Defendant moved to dismiss the indictment for insufficient evidence and unspecified defects in the proceedings, and the minutes were given to the trial court for in camera inspection. The trial court, sua sponte, dismissed the indictment, concluding that under CPL 210.35 (2) the proceedings were defective because 16 jurors who had heard all the critical evidence were not available to participate in the deliberations. The same Judge weeks earlier had dismissed the indictment in an unrelated case, People v Infante, on the same ground. The Appellate Division reversed and reinstated the indictment, quoting from its earlier decision in People v Infante (124 AD2d 86), where it held that so long as at least 12 of the grand jurors who voted to indict heard all the essential and critical evidence, the Grand Jury could return an indictment. We agree, and therefore affirm the Appellate Division order.
CPL 190.25 (1) provides that "proceedings of a grand jury are not valid unless at least sixteen of its members are present", and that the finding of an indictment "requires the concurrence of at least twelve members thereof"; CPL 210.35 (2) specifies that a Grand Jury proceeding is defective when conducted before fewer than 16 grand jurors. In these sections the trial court perceived a legislative intent that the full quorum of 16 jurors be available to participate in the deliberations and vote, reasoning that the Legislature could not have intended as many as four jurors to sit by as passive observers. Thus, in the trial court's view, a valid indictment requires a minimum of 16 of the same grand jurors present on each occasion when critical evidence is presented in an individual defendant's "proceeding," and present at the time of the charge and deliberations. Defendant urges that this interpretation of the Criminal Procedure Law is correct, and that People v Brinkman (309 N.Y. 974) and People v Saperstein (2 N.Y.2d 210, cert denied 353 US 946) are not controlling because they were decided under the predecessor statute, the Code of Criminal Procedure. We conclude, however, that the language changes from the relevant sections of the Code of Criminal Procedure to the Criminal Procedure Law effected no material *301 alteration, and that Brinkman and Saperstein still govern the issue in this case.
The Code of Criminal Procedure, enacted in 1881, contained a quorum requirement and a separate voting requirement. Section 224 provided that the "grand jury must consist of not less than sixteen and not more than twenty-three persons, and the presence of at least sixteen is necessary for the transaction of any business." Section 268 separately specified that an "indictment cannot be found without the concurrence of at least twelve grand jurors."
In People v Brinkman (309 N.Y. 974, supra) this court affirmed the Appellate Division's reinstatement of an indictment that had been dismissed on the ground that fewer than 12 of the 16 jurors who voted the indictment had heard certain evidence. We noted that the evidence at issue was "merely repetitious," and held that when at least 12 members of the Grand Jury who voted to indict heard all the "essential and critical evidence," the Grand Jury was empowered to return an indictment. (Id., at 975-976.) The plain implication of this holding is that there was no requirement that the full quorum, or more than 12 grand jurors, have heard all the essential evidence before a vote could be taken.
The implicit conclusion of Brinkman was made explicit in People v Saperstein (2 N.Y.2d 210, cert denied 353 US 946, supra). In Saperstein, the Grand Jury heard evidence over a number of days. Thirteen of the grand jurors who voted for the indictment were present on three of those days, but fewer than 12 of those 13 were present on two other days when the Grand Jury heard evidence. Concluding that the testimony given on the latter two days was not material, this court upheld the indictment on the ground that 13 of the grand jurors heard all the critical evidence: the "rule of the Brinkman case * * * is that an indictment is good despite the absence of certain grand jurors on various days when testimony is heard, so long as `at least twelve of the Grand Jurors, who voted to indict, heard all the essential and critical evidence'" (People v Saperstein, supra, at 218; see also, People v Salerno, 3 N.Y.2d 175, 178). Since only 13 of the jurors in Saperstein had heard all of the essential evidence, obviously jurors who had not heard that evidence were nonetheless counted toward the quorum requirement, although such jurors would not satisfy the voting requirement.
Thus, it is clear that prior to the passage of the Criminal *302 Procedure Law, the quorum and voting requirements were separate and different; a valid indictment required the concurring vote of at least 12 jurors who had heard the essential evidence, but jurors who had not been present during that testimony could satisfy the quorum requirement.
The Criminal Procedure Law, adopted in 1970, did not change these requirements.
CPL 190.25, the statute that now governs the general proceedings and operation of the Grand Jury, provides in subdivision (1) that: "Proceedings of a grand jury are not valid unless at least 16 of its members are present. The finding of an indictment, a direction to file a prosecutor's information, a decision to submit a grand jury report and every other affirmative official action or decision requires the concurrence of at least 12 members thereof." This section thus combines the separate provisions of sections 224 and 268 of the Code of Criminal Procedure. The language is hardly  and, we conclude, not materially  different. Indeed, had the Legislature intended to change such a basic provision of the Criminal Procedure Law after nearly a century, surely it would have said so. Neither the words of the statute nor its history reveal any intention to rewrite the law in this respect.
Supporting this conclusion, the Staff Comments to the proposed revision state that the section was derived  without change  from sections 224 and 268 of the 1881 Code of Criminal Procedure (see, Staff Comments of Temporary Commission on Revision of Penal Law and Criminal Code [Bartlett Commission], comment to Proposed Criminal Procedure Law § 95.25 [now CPL 190.25]; see also, McKinney's Cons Laws of NY, Book 1, Statutes §§ 120, 125).[1] The original Practice Commentary, similarly, notes that the only new part of the statute was the requirement that at least 12 grand jurors concur for official actions other than the finding of an indictment or filing of a report, which had not been specified in the Criminal Code. (See, Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.25 [1971].)
On its face, CPL 190.25 (1) imposes no requirement that 16 Grand Jury members who must be "present" before official business is transacted also be able to participate in deliberations *303 and voting. The fact that the quorum and voting requirements, formerly dealt with in two separate provisions of the Code of Criminal Procedure, are now combined in a single subdivision adds nothing to the merits of defendant's claim. It merely reflects an organizational change. The separation of the two requirements in the Code of Criminal Procedure was the result of its more detailed chronological orientation, so that the formation, powers and duties of the Grand Jury were treated in the section on preindictment proceedings and the indictment itself in a later title. The Criminal Procedure Law now treats the Grand Jury and all of its proceedings in a single article. The significance defendant reads into this simple organizational transposition is unsupportable.
Nor is defendant's claim buttressed by the minor changes in language: the Criminal Procedure Law uses "proceedings" for which a quorum is required rather than "the transaction of any business" (Code Crim Pro § 224), and requires the concurrence of 12 members "thereof" where the Code of Criminal Procedure had stated only that an indictment could not be found without the concurrence of at least 12 grand jurors (§ 268). Although the language is slightly altered, the meaning of the plain English is still no broader than the rule enunciated in Brinkman and Saperstein.
In sum, the Legislature gave no sign whatsoever that it intended to impose a new requirement that altered long-established law; the statute itself does not on its face have that effect; and the Staff Comments indicate a contrary view. We decline, under those circumstances, to strain to reach the result for which defendant argues.
Furthermore, we cannot agree with defendant's claim that unless his reading of the statute is adopted the quorum requirement is rendered meaningless, as it adds only four idle observers. Even if they may be barred from participating in deliberations or voting,[2] the nondeliberating members of the quorum may well contribute to the Grand Jury's traditional function of furnishing protection against malicious and unfounded prosecution, or being alert to "fraud and improper practices" in the Grand Jury (see, People v Herrmans, 69 Misc 303, 308). In addition, the rule requiring the attendance of a minimum of 16 grand jurors rather than the common-law *304 minimum of 12 to be present at all Grand Jury proceedings obviously has the prophylactic effect of substantially increasing the probability that the requisite 12 jurors will be ultimately available to deliberate and vote when it is time to do so, by providing a margin for the inevitable absence of some jurors. Finally, we note that the protection accorded to defendant by the requirement of indictment by the Grand Jury was not in any significant respect diminished as a result of the fact that fewer jurors than a quorum of 16 had heard all the essential and critical evidence. Had but a single juror of the 12 who heard the evidence been unconvinced of its sufficiency, no true bill could have been returned. That possibility apparently approached reality in this case. If more than 12 jurors had heard all the evidence, the "reservations" of a juror would have been inconsequential.
Accordingly, the order of the Appellate Division should be affirmed.
TITONE, J. (concurring).
The court's holding  that the 16-member quorum required by CPL 190.25 (1) and 210.35 (2) need not consist entirely of grand jurors who have heard all of the critical evidence  creates a serious potential for abuse of the Grand Jury system. While I cannot fault the majority's writing, I am deeply troubled by the potential consequences of its holding. Accordingly, I write separately, both to explain my concerns and, hopefully, to prompt the Legislature to take a closer look at the manner in which the quorum rule has been construed.
Under CPL 190.25 (1) and 210.35 (2), a quorum of 16 Grand Jury members is required for the conduct of Grand Jury proceedings. The majority does not read these provisions as requiring that all 16 quorum members be present to hear all of the critical evidence, and, given the provisions' judicial and legislative history, I cannot disagree. As is clear from the analyses in People v Brinkman (309 N.Y. 974) and People v Saperstein (2 N.Y.2d 210, cert denied 353 US 946), which were effectively incorporated when the Criminal Procedure Law was enacted, the statutory requirement that the grand jurors hear all of the essential evidence pertains only to the 12 who ultimately vote to indict or issue a report.
The problem is, of course, that the rule gives rise to a possibility that as many as four of the grand jurors whose presence is necessary for any official action will not have heard all of the evidence. Although the majority asserts that it is not reaching the question whether such grand jurors may *305 participate in deliberations (majority opn, at 305, n 2),[1] it is plain that a choice must be made. Either these grand jurors must sit by as mute, passive observers or they must be expected to speak.
I must assume that the Legislature did not intend the former, since that would render the requirement of a quorum of 16, rather than 12, meaningless.[2] It seems far more likely that some level of participation by all quorum members was contemplated. Such participation, however, could lead to undesirable consequences. Jurors who have not heard all of the evidence could well have a substantial influence on the decision to indict, issue a report or take any other official action.[3] At the very least, the result would be uninformed decision-making. Of even greater concern is the potential for manipulation. In the worst possible scenario, a "flying squad" of four especially persuasive grand jurors who heard only the most damaging evidence could influence the 12 jurors who, after having heard all the evidence, would not have returned an indictment but for the influence of those four.
In short, the existing scheme, in which a quorum of 16 is required regardless of whether all 16 may ultimately vote, is troublesome from a number of perspectives. Accordingly, *306 while existing law seems to lead inevitably to the majority's conclusion, further legislative study, and perhaps even revision of the existing statutes, seems appropriate.
Order affirmed.
NOTES
[1] The Bartlett Commission comprehensively studied the entire body of law and was unquestionably aware of Brinkman and Saperstein. Surely their work would have reflected such a fundamental change had it been intended.
[2] We do not reach the issue whether  in addition to the necessary 12  jurors who have not heard all the essential and critical evidence can also participate in deliberations or vote. That issue is not presented by this case.
[1] The grand jurors in this case were told that only those who had heard all of the evidence could vote for an indictment, but they were not given a similar instruction with respect to participation in deliberations. Accordingly, it would appear that the issue is at least implicitly raised by this case.
[2] Although the majority suggests that "nondeliberating members of the quorum may well contribute to the Grand Jury's traditional function of furnishing protection against malicious and unfounded prosecution, or being alert to `fraud and improper practices'" (majority opn, at 303), it is difficult to see how these important functions could seriously be performed by individuals who have not been present during the taking of some of the critical evidence. Similarly, the addition of 4 grand jurors to the 12 necessary to issue an indictment will "increas[e] the probability that the requisite 12 jurors will be available to deliberate and vote" (id.) only if the additional 4 have, in fact, heard all of the evidence.
[3] It remains unclear whether the group of 12 grand jurors whose concurrence is required for other "official actions" (see, CPL 190.25 [1]; Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.25, at 215), such as the issuance of subpoenas, must consist solely of those who have heard all of the evidence relevant to the particular action or may instead include one or more quorum members who have not been present at all critical times. In view of the complexity of that problem, its resolution is best left for another day. In any event, regardless of the ultimate resolution of that question, there remains the problem of grand jurors who have not heard all of the pertinent evidence participating in the discussions leading up to the final vote.