■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHELDON WEINBERG, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Moskowitz, J.), rendered January 10, 1989, convicting him of grand larceny in the first degree, conspiracy in the fourth

degree, offering a false instrument for filing in the first degree (37 counts) and falsifying business records in the first degree (26 counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the provision of the sentence which requires the defendant to make restitution in the amount of $16,000,000; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for a hearing to determine the amount of restitution to be imposed.

The defendant and his two codefendant sons Jay Weinberg and Ronald Weinberg operated the Bed-Stuy Health Care Corp. Clinic (hereinafter BSHC), a diagnostic and treatment center entitled to charge the New York State's Medicaid program a fixed fee for each visit by a Medicaid patient. It is alleged in the indictment that from April 1980 to July 1987, the defendant and his codefendants defrauded the Medicaid system of at least $13,300,000 by submitting hundreds of thousands of claims for services which were never rendered. From approximately 1980 to 1984, the defendant's accomplice, Dr. David Beldengreen, generated false Medicaid bills by hand, sent them to a computer firm named Dataline where the bills were computerized (i.e., placed on magnetic tape), and then submitted them for payment. In 1984 the defendant's son Jay had the fraudulent billing scheme computerized so that the false Medicaid bills could be entered in the Dataline computer directly from a computer at the BSHC. These bills were entered under a special program entitled "J.W. Center" and had special "sequence" codes so that they could be distinguished from other BSHC Medicaid bills.

For trial, a Dataline employee who had created the "J.W. Center" program generated five computer print-outs consisting of all entries made under this program to establish the amount of fraud committed from 1984 to 1987. On appeal, the defendant contends that these computer print-outs should not have been admitted into evidence under the business record exception to the hearsay rule because they were specifically created for trial and were not generated in the ordinary course of business. We disagree and conclude that they were properly admitted into evidence under the business record exception. The Dataline employee testified at trial that Dataline's computer tapes were made in the regular course of Dataline's business and that the data was entered into the computer at the time of each transaction (see, CPLR 4518 [a]; CPL 60.10). Furthermore, a clerical employee of BSHC testified that from Monday through Thursday of each work week,

she entered "Jay's work" on a terminal at BSHC using the "J.W. Center" program. Other BSHC clerical employees also testified to making these entries at or about the time of the claimed transactions as part of the regular business of BSHC. The court properly found that the entries made by BSHC on the Dataline tapes were business records within the meaning of CPLR 4518. The five print-outs proffered by the prosecution as People's Exhibits 138-138D constituted summaries of those entries made using the "J.W. Center" program selected from hundreds of thousands of computer entries. As such, they came within the voluminous writings exception to the best evidence rule (see, Richardson, Evidence § 574 [Prince 10th ed]; Guth Realty v Gingold, 34 NY2d 440; Briar Hill Apts. Co. v Teperman, 165 AD2d 519). That the computer print-outs introduced into evidence were produced after the commencement of the criminal proceeding does not affect their admissibility (see, Briar Hill Apts. Co. v Teperman, supra, at 522; United States v Hernandez, 913 F2d 1506, 1512-1513, cert denied — US —, 111 S Ct 1111). Furthermore, we note that before trial, the defendants were provided with copies of Dataline's computer tapes and were given permission to hire a computer expert, at the State's expense, to examine the tapes and the computer print-outs. Therefore, the defendants received a full and fair opportunity of challenging the accuracy of the print-outs by comparing the tapes with the print-outs.

The defendant contends that the People failed to prove that he stole in excess of $1,000,000 from Medicaid. Viewing the evidence adduced at the trial in a light most favorable to the People (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to support the conviction. The People proved that the defendant knew about and partially supervised the fraudulent Medicaid billing that was conducted from the BSHC. Further, the People proved that the amount of this fraud was well in excess of $1,000,000.

At the trial, the court concluded that Dr. David Beldengreen was an accomplice as a matter of law, but refused to instruct the jury that Dr. Beldengreen's guilty plea to the BSHC Medicaid fraud was not binding on the defendant. This was error (see, People v Colascione, 22 NY2d 65, 73-74; People v Allen, 145 AD2d 957, 958; People v Randolph, 46 AD2d 683). However, this error was harmless given the overwhelming evidence of the defendant's guilt (see, People v Crimmins, 36 NY2d 230).

The defendant's contention that he was improperly sentenced in absentia is without merit. After the verdict was

rendered on November 30, 1988, the defendant was continued on bail, over the prosecutor's objection, until his scheduled sentencing on January 10, 1989. On the latter date, he failed to appear and a bench warrant was issued. During a colloquy between the prosecutor and the defendant's counsel, the court was informed that an investigation into the defendant's whereabouts, including a search of his apartment, had yielded evidence which strongly indicated that the defendant had absconded. Under these circumstances, the court properly determined that the defendant had deliberately absented himself for the purpose of frustrating the sentencing process and therefore had forfeited his right to be present at his sentencing *(see, People v Corley,* 67 NY2d 105, 109-110). This forfeiture, based on objective facts and circumstances, occurred by operation of law and is distinct from a waiver of the right to be present, which is premised on a defendant's knowing and voluntary choice not to exercise his right *(see generally, People v Corley, supra; People v Sanchez,* 65 NY2d 436, 444-445; *cf., People v Parker,* 57 NY2d 136, 140). Additionally, we find that the sentence of imprisonment imposed by the court is not excessive *(see, People v Suitte,* 90 AD2d 80).

However, we remit this matter for a hearing on the issue of restitution. The jury's verdict established only that the defendant stole in excess of $1,000,000. The court never made an express finding that the fruits of the offenses amounted to $16,000,000 and since the defendant's attorney raised the issue at sentencing, the court should have conducted a hearing in accordance with CPL 400.30 *(see,* Penal Law § 60.27 [2]).

The defendant's remaining contentions are unpreserved for appellate review, or lacking in merit, or do not warrant reversal. Sullivan, J. P., Harwood, Ritter and Copertino, JJ., concur.