■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BRADLEY PERRY, Respondent. (And Another Related Action.) THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JERARD BRONFMAN, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FITZPATRICK PAUL, Respondent. (And Five Other Related Actions.) [605 NYS2d 790] —Mercure, J. Appeals (1) from two orders of the County Court of Albany County (Marks and Keegan, JJ.), entered September 11, 1991 and October 11, 1991, which granted defendants' motions to dismiss the indictments, (2) from an order of said court (Marks, J.), entered August 5, 1992, which, upon reargument, adhered

to its prior decision granting defendant's motion to dismiss the indictment, and (3) (a) from six orders of said court (Marks, J.), entered September 11, 1991, which granted defendants' motions to dismiss the indictments, and (b) from six orders of said court (Marks, J.), entered August 5, 1992, which, upon reargument, adhered to its prior decision granting defendants' motions to dismiss the indictments.

These appeals arise out of a nearly two-year-long Grand Jury investigation into alleged Medicaid fraud by defendants. Defendants are all podiatrists and Medicaid providers. The substance of the charges is that defendants submitted fraudulent Medicaid claims by falsely billing the State for providing custom-made orthotic appliances while actually providing cheaper appliances that were not custom-made. Defendants were ultimately indicted on various charges of grand larceny in the second degree, grand larceny in the third degree and offering a false instrument for filing in the first degree.

In response to defense motions, County Court dismissed the indictments, finding that there was insufficient competent evidence before the Grand Jury to establish prima facie cases because of the People's failure to lay an adequate foundation for admission of computer printouts of defendants' Medicaid claims and evidence of payment thereof and to show that computer disks submitted by defendants constituted "written instrument[s]" within the meaning of Penal Law § 175.35, to support the charges of offering a false instrument for filing in the first degree. County Court went on to find that the indictments were also subject to dismissal because of various alleged improprieties in the Grand Jury proceedings, including an absence of 12 jurors who heard all of the critical and essential evidence against each defendant voting to indict, the absence of appropriate instructions informing the Grand Jury which jurors could vote and the admission of hearsay evidence and evidence of "uncharged crimes". The People then moved for reargument, submitting additional documentation concerning juror attendance and affirmations relating to the other alleged improprieties. Upon reargument, County Court considered the additional submissions but adhered to its prior decision and orders. The People now appeal and, for the reasons discussed below, we reverse.

Initially, we conclude that County Court erred in ruling that the indictments were not voted on by 12 jurors who had heard all of the essential and critical evidence. Grand Jury action generally requires a quorum of 16 jurors and a vote by

at least 12 *(see,* CPL 190.25 [1]; *People v Collier,* 72 NY2d 298, 299). A valid indictment requires that at least 12 jurors who have heard all of the "essential and critical evidence" vote to indict *(People v Brinkman,* 309 NY 974, 975; *see, People v Collier, supra,* at 301; *People v Saperstein,* 2 NY2d 210, 218, *cert denied* 353 US 946). An indictment that results from a vote of fewer than 12 jurors who heard all of the essential and critical evidence is defective within the meaning of CPL 210.35 and subject to mandatory dismissal *(see,* CPL 210.35 [3]; *People v Collier, supra; People v Di Falco,* 44 NY2d 482; *see also, People v Williams,* 73 NY2d 84, 90-91; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 210.35, at 676).

Our review of the record, including the Grand Jury attendance sheets provided by the People, shows that four jurors, juror Nos. 4, 5, 10 and 17, were present on all 32 days that the Grand Jury met, not three jurors as found by County Court. Additionally, 17 jurors were present on June 26, 1990, the day that the indictments were voted, not 16 jurors as found by County Court. Furthermore, juror No. 19 missed only November 21, 1988 and December 19, 1988, and juror No. 3 missed only December 19, 1988. Defendants do not assert that these dates were related to any of the instant indictments, and, therefore, at least six jurors, Nos. 3, 4, 5, 10, 17 and 19, heard all of the essential and critical evidence with respect to all defendants and were thus eligible to vote as to all.

In addition to these six jurors, there were at least six other jurors who were eligible to vote with respect to each of the defendants. With respect to defendant Bradley Perry, essential and critical evidence was presented on January 9, 1989, April 5, 1990 and June 26, 1990. In addition to the six jurors enumerated above, there were nine other jurors (Nos. 2, 7, 8, 9, 13, 16, 18, 21 and 23) who were present on all of these dates. Similarly, as to defendant Jerard Bronfman, essential and critical evidence was offered on January 9, 1989, April 10, 1989 and June 26, 1990, and there were 12 additional jurors (Nos. 6, 7, 8, 9, 11, 13, 16, 17, 18, 19, 21 and 23) who were present on all of these dates. Essential evidence was offered against defendant Edward Rogan on January 9, 1989, February 6, 1989 and June 26, 1990, and eight additional jurors (Nos. 2, 7, 8, 13, 16, 18, 21 and 23) were present on all of these dates. As for defendant Fitzpatrick Paul, essential evidence was offered on January 9, 1989, April 3, 1989, November 1, 1989, November 30, 1989, April 5, 1990 and June 26, 1990. Seven jurors (Nos. 7, 8, 9, 13, 16, 21 and 23), in addition to the

six listed above, were present on all of these dates. Essential evidence was offered against defendants Anders Holmberg and Charles DeCiutiis on January 9, 1989, March 1, 1990, April 5, 1990, May 1, 1990 and June 26, 1990, and seven additional jurors (Nos. 2, 8, 9, 16, 18, 21 and 23) were present on all of these dates. With respect to defendant David Feinstein, essential evidence was offered on January 9, 1989, April 10, 1989 and June 26, 1990, and 11 additional jurors (Nos. 6, 7, 8, 9, 11, 13, 14, 16, 18, 21 and 23) were present on all of these dates. Essential evidence was offered against the two remaining defendants, Pedro Torres and Louis Scotti, on January 9, 1989, January 23, 1989, November 30, 1989, March 1, 1990 and June 26, 1990. On these dates, there were six additional jurors (Nos. 2, 8, 9, 11, 16 and 23) who were present and were thus eligible to vote.

Contrary to the assertions of several of the defendants, we find that the evidence offered on February 16, 1989 and August 2, 1989 was " 'merely repetitious' " *(People v Collier,* 72 NY2d 298, 301, *supra,* quoting *People v Brinkman,* 309 NY 974, 975-976, *supra)* of other testimony offered against defendants and thus not essential or critical. We also reject the contention that the People did not properly instruct the Grand Jury as to who could vote on the indictments, and the possibility that there were jurors who had not heard all of the essential and critical evidence present and participating in the deliberation process does not warrant dismissal of the indictments under CPL 190.25 (1) and 210.35 (2). So long as there were 12 jurors who heard all of the essential and critical evidence as to each defendant present when the vote was taken, as there were here, the resulting indictments are valid *(see, People v Collier, supra,* at 301).

We also reject the contention that the People failed to establish an adequate foundation for admission of computer printouts of defendants' Medicaid claims. The record reveals that Medicaid providers prepared the claims, either in paper form or on magnetic computer disks, and the claims were then transferred into computer data by a billing service. The billing service then submitted the claims to the Department of Social Services (hereinafter DSS), which compiled and stored the data. According to defendants, the People needed to present the testimony of the Medicaid providers or someone with personal knowledge of the Medicaid providers' business practices and procedures, as well as testimony of a person with personal knowledge of the billing service's transfer of the claims submitted by the Medicaid providers. We disagree. The

DSS custodian of the records provided ample evidence that the records were made in the ordinary course of DSS' business, that it was the regular course of DSS' business to make such records and that the records were prepared contemporaneously with the transactions in question (see, CPLR 4518 [a]; *People v Weinberg*, 183 AD2d 932, 933-934, *lv denied* 80 NY2d 977; *see also, United States v Sanders*, 749 F2d 195). Additionally, the claims submitted by defendants constituted admissions when submitted to the billing service, which acted only as defendants' agent in forwarding the claims to DSS. Therefore, there was an applicable exception to the hearsay rule for each level of hearsay within the chain leading up to DSS (see, *United States v Sanders, supra; People v Weinberg, supra*).

We further conclude that the computer disks submitted by defendants constituted "written instruments" within the purview of Penal Law § 175.00 (3), as it existed both prior to and after the November 1, 1986 amendment (see, L 1986, ch 514). The pre-1986 version of Penal Law § 175.00 (3) broadly defined written instrument to include written or printed matter "or the equivalent thereof". The testimony here adequately indicated that the disks were the equivalent of the written claim forms prepared by Medicaid providers.

A review of the record discloses that none of the additional improprieties cited by County Court sufficiently impaired the integrity of the Grand Jury proceedings so that prejudice to defendants may have resulted (see, CPL 210.35 [5]). Contrary to defendants' suggestions, there was no improper admission of evidence of "uncharged crimes" here that would mandate dismissal. The evidence complained of was part of the subject matter of the Grand Jury's broad investigation, and, although the evidence did not result in charges, defendants have not shown a sufficient possibility of undue prejudice to warrant dismissal (see, CPL 210.35 [5]; *People v Richardson*, 193 AD2d 969, *lv denied* 82 NY2d 725). Additionally, County Court erred in finding that the admission of hearsay evidence warranted dismissal. Although there are instances in the voluminous record where hearsay was admitted, hearsay evidence may be admitted before the Grand Jury so long as the resulting indictments are not founded on hearsay which the Grand Jury "may not have understood as such" *(People v Pelchat*, 62 NY2d 97, 106). The People here instructed the Grand Jury concerning hearsay evidence, and the record does not otherwise reveal specific instances of hearsay evidence that may have prejudiced defendants (see, *People v Acomb*, 115 AD2d 322, *lv denied* 67 NY2d 938). The People also adequately

instructed the Grand Jury to consider the evidence against each defendant separately.

County Court's finding that two defendants who testified before the Grand Jury were improperly questioned is also erroneous. These defendants were provided with ample opportunity to present a reasonably fair and uninterrupted version of the events under investigation (cf., People v Lerman, 116 AD2d 665; People v Durante, 97 AD2d 851), and our review of the record reveals no improper questioning by the People. Similarly, the People's use of leading questions did not impair the integrity of the proceedings. Nor have defendants shown any possibility of prejudice resulting from off the record conversations between the prosecutor and the Grand Jury (see, People v Lancaster, 69 NY2d 20, 26, cert denied 480 US 922). The People produced affirmations establishing that the off the record conversations did not concern substantive matters, only scheduling and related problems, and we find no possibility of prejudice to defendants (see, People v DeRue, 179 AD2d 1027; People v Collins, 154 AD2d 901, lv denied 75 NY2d 769; People v Erceg, 82 AD2d 947).

The People also did not improperly allow a witness to charge the jurors on the law. The testimony referred to by County Court consisted of a witness's description of the requirements of various Medicaid regulations. Because this testimony did not concern the requirements of the Penal Law, this was a proper subject of testimony for a witness for the People and did not violate the requirement that only the People instruct the Grand Jury on the law (see, People v DeRue, supra).

Finally, we reject the contention of some defendants that the People improperly withheld exculpatory information from the Grand Jury by failing to provide certain medical records. These defendants have not shown how the People's failure to provide this evidence violated the prosecutor's duty of fair dealing before the Grand Jury (see, People v Mitchell, 82 NY2d 509).

Weiss, P. J., Mikoll and Mahoney, JJ., concur; Cardona, J., not taking part. Ordered that the orders are reversed, on the law and the facts, motions to dismiss the indictments denied, indictments reinstated and matter remitted to the County Court of Albany County for further proceedings not inconsistent with this Court's decision.