| People v Brois |
|:---:|
| 2023 NY Slip Op 34737(U) |
| September 13, 2023 |
| Supreme Court, Westchester County |
| Docket Number: Indictment No. 23-71141-01 |
| Judge: Anne E. Minihan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT: STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                    -against-

THEODORE BROIS                                    DECISION & ORDER
                              Defendant.          Indictment No. 23-71141-01
-------------------------------------------------------------------X
MINIHAN, J.

Defendant, Theodore Brois, is charged by Westchester County Indictment Number 23-71141-01 with Criminal Possession of a Weapon in the First Degree (Penal Law § 265.04[2]), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) (6 counts), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[2]), and Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[7]) (8 counts). Defendant is charged together with codefendants Brandon Brois and Helene Brois with Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[2]), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) (2 counts), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[2]), and Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[7]) (2 counts). Defendant is charged together with codefendant Helene Brois with Criminal Possession of a Firearm (Penal Law § 265.01-b[1]).

Defendant has filed an omnibus motion consisting of a Notice of Motion, an Affirmation in Support, and a Memorandum of Law. Attached thereto are three Exhibits. In response, the People filed an Affirmation in Opposition and a Memorandum of Law. On August 15, 2023, defendant filed a Reply.

I.

### MOTION to SUPPRESS PHYSICAL EVIDENCE and MOTION to CONTROVERT the SEARCH WARRANT

The Court orders a *Mapp* hearing prior to trial to determine the propriety of any search resulting in the seizure of property from defendant[1] (*see Mapp v Ohio*, 367 US 643 [1961]). The hearing will also address whether any evidence was obtained in violation of defendant's Fourth Amendment rights (*see Dunaway v New York*, 442 US 200 [1979]).

Defendant moves this Court to controvert the search warrant for his home located at 3 Tallwoods Road in the Town of North Castle, Westchester County, New York and to suppress any physical evidence obtained as a result, alleging that the warrant was issued without probable cause and based on stale information, information consistent with innocent conduct, and on the incorrect police opinion that the gun parts ordered by defendant could only be used to make an

---

[1] Defendant, however, lacks standing to contest the seizure of anything from the persons of his codefendants, Brandon Brois and Helene Brois.

[* 1]

illegal assault weapon. Defendant also argues that the warrant application is subject to judicially enhanced scrutiny because the search invaded conduct protected by the Second Amendment. Alternatively, defendant moves for a *Franks* hearing.

The results of a search conducted pursuant to a facially sufficient search warrant are not subject to a suppression hearing (*People v Arnau*, 58 NY2d 27 [1982]). The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I § 12 of the New York State Constitution contains identical language. "A search warrant must be supported by evidence establishing probable cause to believe that an offense has been or is being committed, or that evidence of criminality may be found in a certain place" (*People v Londono*, 148 AD2d 753 [2d Dept 1989]). Consistent with the constitutional provisions, CPL 690.45(4) requires that when a search warrant authorizes the seizure of property, the warrant must include "[a] description of the property which is the subject of the search." "To meet the particularity requirement, the warrant must be specific enough to leave no discretion to the police" (*see People v Cahill*, 2 NY3d 14, 41 [2003]). This Court recognizes the "strong judicial preferences for search warrants" (*People v Leggio*, 84 AD3d 1116, 1117 [2d Dept 2011]). Upon review of the four corners of the search warrant affidavit, the warrant was adequately supported by probable cause, and sufficiently particular as to the place to be searched and the things to be seized.

Defendant's argument that the alleged criminality here relates to an otherwise protected constitutional right and thus this Court must review the application "*de novo*, with little to no deference for the initial magistrate's probable cause determination" (*see* Defendant's Reply, p 2) is inaccurate. The details provided in the search warrant affidavit established probable cause to believe that defendant unlawfully possessed firearms, assault weapons, machine guns, and component gun parts to make or modify firearms into assault weapons in his home. The Second Amendment affords citizens the right to own and bear only those firearms that they lawfully possess. Here, according to the search warrant affidavit, defendant did not have a New York State pistol permit, or any weapons registered as assault weapons in the database maintained by the New York State Police (*see* Affidavit, ¶ 17). As such, his alleged possession of the firearms sought to be seized was not lawful.

Defendant maintains that he legally purchased items via Brownells.com, as set forth in the search warrant affidavit, and therefore had a presumptive constitutionally protected right to possess them (*see* Defendant's Reply, p 2). The search warrant application relied on the affidavit of Town of North Castle Police Department Detective Conlan whose experience includes investigating the possession of firearms and familiarity with items used along with firearms and the ways in which people that unlawfully possess firearms conceal, store, and use their unlawful firearms and associated items (*see* Affidavit, ¶ 4, 5, 20). Based upon his experience and training in firearms, Detective Conlan indicated that the legally purchased gun parts on Brownells.com could be used to create illegal firearms (*see* Affidavit, ¶ 8, 13, 14, 15). Detective Conlan provided details about some of the specific parts ordered and how they could be used to construct an illegal assault weapon (*see* Affidavit, ¶ 14). Defendant argues that Detective Conlan materially misrepresented the law and facts when he stated, "[T]here is no other reason to purchase any of these items other than to construct an assault weapon" (*see* Affidavit, ¶ 15) and

2

[* 2]

"I am further advised by Sergeant Harrison that neither he nor Detective Holzman are aware of an alternate use of the … folding stock adapters, other than to alter a semi-automatic rifle into an '[a]ssault [w]eapon'" (*see* Affidavit, ¶ 16). Detective Conlan provided this information based upon his own experience and training in firearms, the description from the Brownells.com website, as well as the firearm experience of two of the officers at the Westchester County Department of Public Safety's Forensic Investigations Unit, the commanding officer/laboratory director and senior firearms examiner who has examined and tested thousands of firearms, including semi-automatic rifles and assault weapons, in the course of over 20 years. The officers' background is relevant because "experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not" (*US v Gaskin*, 364 F3d 438, 457 [2nd Cir 2004]). Indeed, the intrinsic nature of the parts ordered provided probable cause to believe they were associated with criminal activity since the parts, on their own, would serve no practical purpose. "Defendant's accumulation of firearm parts supported the inference that he intended to construct a firearm, which, in turn, supported probable cause to believe that he possessed a firearm" (*Connecticut v Holley*, 324 Conn 344, 353-354 [2016]). Defendant has failed to demonstrate that the warrant was based upon an affidavit containing false statements made knowingly or intentionally, or with reckless disregard for the truth (*People v McGeachy*, 74 AD3d 989 [2d Dept 2010]) and defendant has failed to make a substantial preliminary showing of cause for a *Franks-Alfinito* hearing (*Franks v Delaware*, 438 US 154 [1978]; *People v Alfinito*, 16 NY2d 181 [1965]; *People v Novick*, 293 AD2d 692 [2d Dept 2002]).

Defendant argues that the evidence supplied in the affidavit merely speculates that a crime "could be committed" and that there is no evidence that defendant watched any of the videos or instruction guides that the detective references (*see* Defendant's Memorandum of Law, p 14-15). The affidavit, however, provided probable cause to believe that a crime had been or was being committed in the home. For one, the affidavit contained a listing of gun parts and other items purchased on Brownells.com in the name of defendant and addressed to defendant (*see* Affidavit, ¶ 11) and it contained a description of how those parts could be used to make illegal assault weapons (*see* Affidavit, ¶ 8, 13-16). Second, the affidavit provided the criminal history of codefendant Brandon Brois, defendant's son, including a conviction for Attempted Criminal Possession of a Weapon in the Second Degree in March of 2019 in New York County (*see* Affidavit, ¶ 18-19). Defendant argues that details of Brandon Brois's criminal past was "only included [in the application] to scare and prejudice the issuing magistrate" (*see* Defendant's Memorandum of Law, p 12). However, according to the affidavit, 3 Tallwoods Road was the address associated with five incidents pertaining to Brandon Brois, including an arrest for Driving While Intoxicated in North Castle in February 2017 in which several firearms, weapons, and ammunition were located in his vehicle at the time and a 2019 arrest, and subsequent conviction, in Walton, New York for Criminal Possession of a Weapon in the Fourth Degree and Criminal Possession of a Controlled Substance in the Seventh Degree (*see* Affidavit, ¶ 19). In that case, Brandon Brois possessed "ghost" guns, Glock style pistols constructed from different weapons or custom built with no identifying serial numbers, in a vehicle registered to his mother, and co-defendant here, Helene Brois (*see* Affidavit, ¶ 19). Brandon Brois's conduct and convictions for illegally possessing firearms further links the 3 Tallwoods Road address to illegal firearms.

3

Moreover, one of the parts allegedly purchased by defendant was one in which was returned because defendant's "son never used the item" (*see* Affidavit, ¶ 18). Notably, because of his prior felony conviction for Attempted Criminal Possession of a Weapon in the Second Degree, Brandon Brois was not permitted at the time to ship, transport, receive, or possess firearms (18 USC § 922[g]; *see* Affidavit, ¶ 18). The inclusion of Brandon Brois's arrests and convictions was relevant in establishing probable cause to search 3 Tallwoods Road for illegal weapons. Brandon Brois's illegal possession of firearms, shotguns, ghost guns, and ammunition between 2017 and 2019, while living at 3 Tallwoods Road, in conjunction with defendant's online purchasing of gun parts usable to make semi-automatic rifles and converting them into assault weapons through August 2021, establishes probable cause between the Brois's possession of illegal firearms and assault weapons and the 3 Tallwoods Road address.

Defendant further argues that the facts adduced in the search warrant affidavit supporting the probable cause for the issuance of the warrant were stale since five months had elapsed between the date of the last shipment from Brownells.com and the date of the warrant. "The search warrant application must provide the court with sufficient information to support a reasonable belief that evidence of illegal activity will be present at the specific time and place of the search" (*People v Williams*, 249 AD2d 343 [1998]). The question of staleness is not resolved by merely counting the number of days between the events giving rise to the information and the issuance of the warrant, but the information may be acted upon when the facts existing in the past, which were sufficient to give rise to probable cause, continue to exist at the time the application for a search warrant is made (*People v Clarke*, 173 AD2d 550 [2d Dept 1991]). This largely depends on the nature of the property to be seized (*People v Walker*, 285 AD2d 660 [3d Dept. 2001]). Based on Detective Conlan's review of the invoices from Brownells.com, the online transactions spanned over a two-year period, evincing a continuous activity of a person or persons at the 3 Tallwoods Road home purchasing various gun components and parts. Moreover, the nature of the gun parts, used to construct homemade firearms and modify semi-automatic rifles into prohibited assault weapons, further strengthens the link between 3 Tallwoods Road and the presence of illegal firearms and assault weapons there. "Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time" (*US v Pritchett*, 40 Fed Appx 901, 906 [6th Cir 2002]). They are not readily disposed of by way of sale or ingestion. Firearms can be collected and stored and are likely to remain inside a residence for a long period of time. As such, given the nature of the evidence sought, it was reasonable for the issuing judge to believe that firearms would be found in the home at the time of the application. This belief was confirmed, ultimately, when numerous firearms and assault weapons were recovered from 3 Tallwoods Road during the execution of the search warrant. The information relied upon by the judge was not stale to provide probable cause for issuance of the search warrant.

Finally, whether the hundreds of pages of invoices were attached to the affidavit when it was signed by the issuing judge is immaterial because the affidavit listed specific items from those invoices, the date, and to whom and to what address they were shipped. Defendant argues that some items were shipped to a federal firearms licensee on behalf of defendant and thus, there is no link to the 3 Tallwoods Road address. However, over twenty of the listed items were in fact shipped to defendant's home and addressed to him.

4

The Court has also reviewed the Search Warrant Order and finds it to be proper in all respects. For the above reasons, the Court denies defendant's motion to controvert the search warrant and to suppress the evidence seized during the search.

## II.
### MOTION to STRIKE STATEMENT NOTICE

The People, pursuant to CPL 710.30(1)(a), provided notice of an oral statement allegedly made by defendant during the booking process at the North Castle Police Department on January 25, 2022 at approximately 9:09 P.M. The People did not provide the sum and substance of that statement in their notice, but rather directed defendant to the "booking video sent to defense counsel via the [Discovery] Portal on February 10, 2022 and again on May 8, 2023." Defense counsel moves to strike this notice, arguing that he cannot locate that statement within the 400 booking videos that the People provided and points out that none of the recordings contain audio. Defense counsel indicates that he reached out to the Assistant District Attorney for assistance in locating the statement on May 30, July 12, July 14, and July 18, 2023. According to counsel, on July 20, 2023, a response was received by the District Attorney's Office, via email, indicating, "My understanding is that the booking video may not have sound." Defense counsel states that he has been unable to locate the statement and is therefore unable to move to suppress it. In their answer, the People advise that they do not seek to use the statement on their direct case and ask the Court to deny the motion to strike as moot. Notably, the People do not indicate whether or not the statement exists. The People's notice fails to specify the evidence intended to be offered and defendant cannot intelligently identify it (*People v Lopez*, 84 NY2d 425 [1994]). As such, defendant's motion to strike the notice is granted and, to the extent that it exists, the People are precluded from offering evidence of defendant's statement to police during the booking process in their case in chief.

## III.
### MOTION to SUPPRESS NOTICED STATEMENT

The People, pursuant to CPL 710.30(1)(a), noticed a statement allegedly made by defendant at his home to a member of the Town of North Castle Police Department on January 25, 2022 at approximately 11:30 A.M. Defendant moves to suppress this statement as involuntary, the product of an unlawful arrest, and made without being apprised of *Miranda* warnings.

Defendant's motion to suppress is granted to the extent that a pre-trial *Huntley* hearing shall be held, on consent of the People, to determine whether the alleged statement was involuntarily made within the meaning of CPL 60.45 (*see* CPL 710.20(3); CPL 710.60[3][b]; *People v Weaver*, 49 NY2d 1012 [1980]). The hearing will also address whether the alleged statement was obtained in violation of defendant's Fourth Amendment rights (*see Dunaway v New York*, 442 US 200 [1979]).

IV.
## MOTION for DISCOVERY, DISCLOSURE, and INSPECTION
### CPL ARTICLE 245

To whatever extent material that is discoverable under CPL Article 245 has not already been provided to the defense by the People, the defendant's motion is granted and such discovery, including both *Brady* material[2] and *Rosario* material, shall be provided forthwith. Leave is granted for either party to seek a protective order (CPL Article 245).

In defendant's motion, filed on July 21, 2023, counsel claims that he has not received the following outstanding discovery: (1) police body-worn video recordings; (2) police reports from the FBI, Westchester County District Attorney's Office investigators, and New York City Police Department; (3) Zello Work communications between police officers; (4) emails between the FBI and North Castle Police Department detectives; (5) cell phone evidence; and (6) *Rosario* material consisting of prior statements of witnesses. The People, in their answer, indicate that the discoverable materials sought by defendant have been provided or found not to exist. The People provided continued discovery in this matter on the following dates in 2022: February 10, March 17, April 29, and June 30 and on the following dates in 2023: April 18, April 20, May 8, May 9, June 16, June 26, and July 26. The People filed a Certificate of Compliance ("COC") and Statement of Readiness ("SOR") on July 26, 2023. Upon receipt, defense counsel contested them, arguing that Zello Work communications and emails between the FBI and North Castle Police Department detectives still had not been provided to him. On July 28, 2023, the assigned Assistant District Attorney filed a Supplemental COC after providing defense counsel with emails between the FBI and North Castle Police Department detectives and officers' handwritten notes. Upon receipt of these items, on August 1, 2023, defense counsel advised this Court that he was no longer contesting the sufficiency of the People's COC or SOR. On August 16, 2023, after the People served DNA testing reports on counsel, they filed a second Supplemental COC and SOR.

If any discovery issues remain unresolved within three business days of receipt of this order, counsel for defendant shall contact the Court to request an immediate compliance conference.

Moreover, the People must disclose the terms of any deal or agreement made between the People and any prosecution witness at the earliest possible date (*see People v Steadman*, 82 NY2d 1 [1993]; *Giglio v United States*, 405 US 150 [1972]; *Brady v Maryland*, 373 US 83 [1963]; *People v Wooley*, 200 AD2d 644 [2d Dept 1994]).

---

[2] The People have a continuing duty to disclose exculpatory material (*Brady v Maryland*, 373 US 83 [1963]; *see Giglio v United States*, 405 US 150 [1971]). If the People are or become aware of any such material which is arguably subject to disclosure under *Brady* and its progeny and CPL Article 245 which they are unwilling to consent to disclose, they are directed to bring it to the immediate attention of the Court and to submit it for an in-camera inspection by the Court and determination as to whether it constitutes *Brady* material discoverable by defendant. The Court has served a *Brady* Order on the People, dated May 23, 2023, which details the time period their disclosure must be made in accordance with the standards set for in the United States and New York State Constitutions and CPL Article 245.

6

V.

## MOTION to INSPECT, DISMISS, and/or REDUCE
### CPL ARTICLE 190

Defendant moves pursuant to CPL 210.20 to dismiss the indictment, or reduce the counts charged against him, on the grounds that the evidence before the Grand Jury was legally insufficient and the Grand Jury proceeding was defective within the meaning of CPL 210.35. On consent of the People, the Court has reviewed the minutes of the proceedings before the Grand Jury.

The Court denies defendant's motion to dismiss or reduce the counts in the indictment for legally insufficient evidence because a review of the minutes reveals that the evidence presented, if accepted as true, would be legally sufficient to establish every element of the offenses charged (*see* CPL 210.30[2]). Pursuant to CPL 190.65(1), an indictment must be supported by legally sufficient evidence which establishes that the defendant committed the offenses charged. "Courts assessing the sufficiency of the evidence before a grand jury must evaluate whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted--and deferring all questions as to the weight or quality of the evidence--would warrant conviction" (*People v Mills*, 1 NY3d 269, 274-275 [2002]). Legally sufficient evidence means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof (CPL 70.10[1]; *see People v Flowers*, 138 AD3d 1138, 1139 [2d Dept 2016]). "In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Jessup*, 90 AD3d 782, 783 [2d Dept 2011]). "The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the Grand Jury could rationally have drawn the guilty inference. That other, innocent inferences could possibly be drawn from those facts is irrelevant to the sufficiency inquiry as long as the Grand Jury could rationally have drawn the guilty inference" (*People v Bello*, 92 NY2d 523, 526 [1998]). Here, the evidence presented, if accepted as true, is legally sufficient to establish every element of the offenses charged (CPL 210.30[2]).

With respect to defendant's claim that the Grand Jury proceeding was defective within the meaning of CPL 210.35, a review of the minutes reveals that a quorum of the grand jurors was present during the presentation of evidence and that the Assistant District Attorneys properly and clearly instructed the Grand Jury on the law and only permitted those grand jurors who heard all the evidence to vote the matter (*see People v Collier*, 72 NY2d 298 [1988]; *People v Calbud*, 49 NY2d 389 [1980]; *People v Valles*, 62 NY2d 36 [1984]; *People v Burch*, 108 AD3d 679 [2d Dept 2013]).

To the extent that defendant's motion seeks disclosure of portions of the Grand Jury minutes beyond the disclosure directed by CPL Article 245, such as the prosecutors' instructions and/or colloquies, the Court denies that branch of the motion.

[* 7]

VI.

## MOTION for *SANDOVAL* and *VENTIMIGLIA* HEARINGS

Defendant has moved for a pre-trial hearing to permit the trial court to determine the extent, if at all, to which the People may inquire into defendant's prior criminal convictions or prior uncharged criminal, vicious, or immoral conduct. On the People's consent, the court orders a pre-trial *Sandoval* hearing (*see People v Sandoval*, 34 NY2d 371[1974]). At said hearing, the People shall notify defendant, in compliance with CPL Article 245, of all specific instances of his criminal, prior uncharged criminal, vicious, or immoral conduct of which they have knowledge and which they intend to use in an attempt to impeach defendant's credibility if he elects to testify at trial, and, in any event, not less than 15 days prior to the first scheduled trial date. Defendant shall bear the burden of identifying any instances of his prior misconduct that he submits the People should not be permitted to use to impeach his credibility. Defendant shall be required to identify the basis of his belief that each event or incident may be unduly prejudicial to his ability to testify as a witness on his own behalf (*see People v Matthews*, 68 NY2d 118 [1986]; *People v Malphurs*, 111 AD2d 266 [2d Dept 1985]).

If the People determine that they will seek to introduce evidence at trial of any prior uncharged misconduct and criminal acts of defendant, including acts sought to be used in their case in chief, they shall so notify the court and defense counsel, in compliance with CPL Article 245, and, in any event, not less than 15 days prior to the first scheduled trial date, and a *Ventimiglia/Molineux* hearing (*see People v Ventimiglia*, 52 NY2d 350 [1981]; *People v Molineux*, 168 NY 264 [1901]) shall be held immediately prior to trial to determine whether or not any evidence of uncharged crimes may be so used by the People. The People are urged to make an appropriate decision in this regard sufficiently in advance of trial to allow any *Ventimiglia/Molineux* hearing to be consolidated and held with the other hearings herein.

VII.

## *BRADY* MATERIAL

The People acknowledge their continuing duty to disclose exculpatory material (*Brady v Maryland*, 373 US 83 [1963]; *see Giglio v United States*, 405 US 150 [1971]). The People also acknowledge that they have or will comply with their obligations under CPL 245.20(1) (k), (l), and (p). Again, if the People are or become aware of any such material which is arguably subject to disclosure under *Brady* and its progeny and Criminal Procedure Law Article 245 which they are unwilling to consent to disclose, they are directed to bring it to the immediate attention of the Court and to submit it for the Court's in camera inspection and determination as to whether it constitutes *Brady* material discoverable by defendant.

The Court has served a *Brady* Order on the People, dated May 23, 2023, which details the time period their disclosure must be made in accordance with the standards set forth in the United States and New York State Constitutions and CPL Article 245.

[* 8]

VIII.

## HEARINGS TWENTY DAYS BEFORE TRIAL

Defendant requests that pre-trial hearings, except the *Sandoval* hearing, be scheduled at least twenty days before trial so that the hearing minutes may be transcribed in time for their use at trial. The hearings will be scheduled at a time that is convenient to the Court, upon due consideration of all of its other cases and obligations.

IX.

## LEAVE TO MAKE ADDITIONAL MOTIONS

Defendant's motion for leave to make additional motions is denied. Defendant must demonstrate good cause for any further pre-trial motion for omnibus relief, in accordance with CPL 255.20(3).

The foregoing constitutes the Decision and Order of this Court.

Dated:    White Plains, New York
          September 13, 2023

Honorable Anne E. Minihan
Justice of the Supreme Court

To:
Hon. Miriam E. Rocah
District Attorney, Westchester County
111 Dr. Martin Luther King, Jr., Blvd.
White Plains, NY 10601
Attn: ADA James Bavero
      ADA Courtney Johnson
JBavero@westchesterda.net
CJohnson@westchesterda.net


Tobin & Bernardon LLP
James Tobin, Esq.
2500 Westchester Ave., Suite 107
Purchase, NY 10577
james@tobinbernardon.com
*Attorney for defendant, Theodore Brois*

9